In the Matter of the Appraisal, under the Legacy and Inheritance Tax Act, of the Property of Frank Linsly James, Deceased.

The object of the amendment of 1887 (Chap. 713, Laws of 1887) to the Collateral Inheritance Tax Act was to impose a succession tax, with respect to property of non-resident decedents within this state, and the tax is laid only in case property of a non-resident decedent within the state passes to a collateral relative or a stranger in blood.

Where, by the will of a non-resident testator, who died while said act was in operation, leaving property in his place of domicile and in this state, legacies were left to collateral relatives, *held*, that it did not lie with the officers of the state to say which part of the testator's estate shall be appropriated to the payment of the legacies, but the executor has that right and may pay them out of the foreign estate and so save the estate here from the payment of a succession tax under said act.

It was not the intent of the act to reach, for the purposes of taxation, any personal property not within the state, either in fact or because of the domicile here of its owner.

The legal *situs* of that species of property represented by certificates of corporate stock is where the corporation exists or where the shareholder has his domicile.

A citizen of the Kingdom of Great Britain, and who was there domiciled, died leaving a will, made at his place of domicile, and leaving a large amount of property both in that country and in this state. By his will, legacies were given to collateral relatives and the residuary estate to the executors in trust for the benefit of the testator's two brothers. The property which the testator died possessed of in Great Britain was largely in excess of the amount of said legacies; a portion of them the executor had paid out of said property and had declared his determination to pay the balance out of the same, leaving the property here to go into the residuary estate. *Held,* that the legacies were not liable to taxation under said act.

The testator owned stock and bonds of foreign corporations. The certificates of stock and the bonds were, at the time of his death, in this state. *Held,* that they were not property in this state within the meaning of said act, and so could not properly be included in the valuation of the testator's estate here for the purposes of taxation under the act.

*In re Romaine* (127 N. Y. 80); *In re Swift* (137 id. 77); *In re Merriam* (141 id. 479), distinguished.

Reported below, 77 Hun, 211.

(Argued October 29, 1894; decided November 27, 1894.)

APPEAL from order of the General Term of the Supreme Court in the first judicial department, made the first Monday of March, 1894, which reversed an order of the surrogate of the county of New York, affirming an appraisal of the assets of the property of Frank Linsly James, deceased, under the Legacy and Inheritance Tax Act (Chap. 713, Laws of 1887), and granted a new hearing.

The facts, so far as material, are stated in the opinion.

*Edward S. Kaufman* for appellant. The property in this state is subject to the tax, although the legatees are aliens, and the legacies or some part thereof were paid abroad. (Chap. 713, Laws of 1887; *In re Enston,* 113 N. Y. 174; *Eyre* v. *Jacob,* 14 Gratt. 422 ; *Fredrickson* v. *Louisiana,* 23 How. [U. S.] 447; Cooley on Taxn. [2d ed.] 55, 56, 225 ; *In re Merriam,* 141 N. Y. 484; *State* v. *Dalrymple,* 70 Md. 294.) The legacies of the Royal Hospital for Incurables and to the Cheyne Hospital are subject to the tax. (*In re Prime,* 136 N. Y. 347.) The stocks of corporations foreign to the

state of New York should be included in the valuation of the estate. (*Strode* v. *Com.*, 52 Penn. St. 181; *Clymer* v. *Com.*, Id. 189; *In re Howard*, 5 Dem. 483; *In re Twigg*, 15 N. Y. Supp. 548; *State* v. *Dalrymple*, 70 Md. 294; *Price* v. *Brown*, 98 N. Y. 388; *Catlin* v. *Hull*, 21 Vt. 158; *Lyall* v. *Lyall*, L. R. [15 Eq. Cas.] 1; *In re Cigala*, L. R. [7 Ch. Div.] 356.)

*Edward M. Shepard* for respondent. The estate having paid the tax under the British law upon these legacies the court will not be astute to give such construction to our statute as will subject the property to double taxation. (*In re Enston*, 113 N. Y. 174.) The stocks of foreign corporations owned by the non-resident decedent at the time of his death were not property within this state, although the paper certificates were in existence here. (*Plimpton* v. *Bigelow*, 93 N. Y. 599, 600; *Douglass* v. *P. Ins. Co.*, 138 id. 209; *In re Enston*, 113 id. 174; *C. R. R. Co.* v. *Pearce*, 28 Ind. 502; *Hawley* v. *Brumaghim*, 33 Cal. 394; *In re Merriam*, 141 N. Y. 479; *In re Romaine*, 127 id. 80.) The estate must be clearly brought within the terms of the law before it can be subject to the burden of the tax. (*In re Enston*, 113 N. Y. 174, 177.)

GRAY, J. At the time of his death in Africa, in April, 1890, the testator was a citizen of the Kingdom of Great Britain and was there domiciled. By his last will, which he had made at the place of his domicile, he disposed of a very large estate. He left property in Great Britain, which was valued at $477,630, and property in this country, which was valued at $2,303,472.53. He gave legacies to collateral relatives and to charities which, in the aggregate, amounted to $236,810. The residue of his estate was given to his executors, upon trusts for the benefit of his two brothers. The charitable bequests were to foreign corporations and the persons, to whom legacies were given, were residents of Great Britain, with the exception of two; who resided in this country, though where does not appear. He left no debts here. His will was

proved in England in June, 1890, and, afterwards, as the result of an action brought in the courts of this state by the executors, was established here and letters testamentary were issued thereon to John Arthur Jones; one of the executors named and also a resident of Great Britain. He applied to the surrogate of the county of New York for the appointment of an appraiser; for the purpose of an appraisement, under the law of this state imposing a tax upon gifts, legacies and collateral inheritances. Besides the facts which have been stated, it appeared that by the will all of the legacies were to be paid within three months of the testator's death, free of duty; that a portion of the amount given in legacies had already been paid in Great Britain, out of the estate there, together with the duties imposed on legacies by the law of that country and that the property in this country consisted, among other things, in the stock and bonds of corporations of this and of other states; which securities were deposited in this state at the time of testator's death. The surrogate, finding that the value of the estate here amounted to .82825 per cent of testator's whole estate, decided that the legacies given by the will were liable to taxation, under the law, on the basis of that percentage and he, also, held that, in valuing the assets of the estate here, there should be included the stock and bonds of the foreign corporations. Upon appeal to the General Term of the Supreme Court, the decree of the surrogate was reversed in those respects and the rulings referred to present the questions for our consideration, upon this appeal.

The act in force at the time, which imposed a tax on gifts, legacies and collateral inheritances, is contained in chapter 713 of the Laws of 1887. By the first section, it was provided that "all property which shall pass by will, or by the intestate laws of this state, from any person who may die seized or possessed of the same while a resident of this state, or if such decedent was not a resident of this state at the time of death, which property, or any part thereof, shall be within this state, * * * shall be and is subject to a tax of five dollars on

every hundred dollars of clear market value of such property, etc."

The change in the existing law, which the passage of this act effected, was to impose a succession tax, with respect to the property of non-resident decedents, which should be within this state. As the law stood before, under the act of 1885, it could not be gathered from its language that the legislature intended to impose a tax upon property in this state passing from non-resident decedents and the act of 1887 was, undoubtedly, passed in order to comprehend such cases. (*Matter of Enston*, 113 N. Y. 174.) Under its provisions, the question of the residence of the deceased owner, and of the legatee, or of the collateral kindred, is, of course, of no materiality. It is the property of the decedent which is sought to be subjected to the tax. The right of the state to impose the tax is based upon its dominion over what property is situated within its territory. If the property consisted in personalty, its legal situs, although it, in fact, existed elsewhere than in the state, would follow the domicile of its owner and thus, if he were a resident of the state, become subject to taxation there. Another clear inference from the language of the amending statute, is, in our judgment, that the tax is laid only in the case where property of the non-resident decedent within the state passes to the legatee's collateral relative, or stranger in blood. Having, by the previous act of 1885, imposed a succession tax with respect to the property of residents of the state, the legislature added by amendment a further provision, which imposed the same tax with respect to any property of non-residents, that should be within the state and that should pass to persons or corporations, not excepted by the statute. That is to say, the property of non-resident decedents was not subjected absolutely to the tax, except where it, in fact, passed to the person, or corporation. In the present case, the property, which the testator died possessed of in Great Britain, is largely in excess of the amount given by him in legacies. Some portion of them has already been paid from the English estate and the executor has declared

his determination of appropriating that part of the testator's property to their payment; so that the American estate shall constitute the residuary estate, disposed of by the will in favor of the testator's brothers. This he may rightly do and thus save the estate from the payment of the succession tax imposed by our laws. The fact of such an appropriation will, of course, appear upon his accounting. If the executor determines to pay the legacies from the English estate, the American estate is, thereby, freed from the burden of the special tax; the imposition of which depends upon the fact of a succession by the legatee to some property which is within the state. If the American estate is appropriated to persons, who are within the excepted degrees of relationship to the testator, the right to claim the tax from the executor is gone. It does not lie with the officers of the state to say, in such a case, which part of the testator's property shall be appropriated to the payment of the legacies. The law is not arbitrary in its application. It is simply absolute in its requirements, when the precise case arises, which it was framed to meet; and where, as here, the case is not presented of an appropriation of any part of the American estate in payment of the legacies to the foreign legatees, this special tax law cannot and should not apply. To this view we are all the more disposed because to hold otherwise might be to subject this estate to taxation both in Great Britain and in this state. Such a result of a double taxation is one which the courts should incline to avoid; whenever it is possible, within reason, to do so.

This conclusion would seem to render further discussion unnecessary; but, in view of the importance of the ruling of the courts below upon the question of whether stocks of foreign corporations should be included in the valuation of testator's estate, it may be proper to express our judgment further. We do not think it was the intendment of the act of 1887 to reach, for purposes of taxation, any personal property that was not within the state, either in fact, or because of the domicile here of its owner. The reading of the act does not authorize us to construe it as an effort to tax that over

which there was no jurisdiction and it would be highly
improper to impute to the legislature such an intention. The
stocks of foreign corporations, which formed part of this
estate, were not property in the legal sense. The share certifi-
cates, which the testator held, represented the interests which
he possessed in the corporations which issued them, and the
legal situs of that species of personal property is where the
corporation exists, or where the shareholder has his domicile.
We so held in the *Enston* case (*supra*) and the act of 1887
furnishes no evidence of any intention to change the policy of
the law; which has regarded the stocks of foreign corpora-
tions as being taxable only in the place of the owner's
residence, or in that of the corporation's. In the *Romaine*
case (127 N. Y. 80), nothing was decided to the contrary of
this view. The property of the non-resident decedent, in that
case, which was held to be liable to taxation, was stated to be
a mortgage upon real estate in the city of New York; deposits
in savings banks in that city and stocks and bonds of different
corporations, but whether domestic, or foreign, it was not
made to appear. The appellant, in substance, argues that the
provision for a tax on "property * * * within this
state," which the act of 1887 contains, shows that the legis-
lature intended to include as property, for purposes of taxa-
tion, in the estate of a non-resident decedent, evidences of
property like certificates of stocks; but, without discussing
the power of the legislature to do any such thing, we think
that he is straining construction and importing a sense in the
word "property," which the law has not attached. Both in
the *Swift* case (137 N. Y. 77) and in the *Merriam* case (141 id.
479), the testator was a resident of the state and we held that
certain personal chattels without the state, in the one case, and
the stocks of foreign corporations, in the other case, should be
included in the appraisement of the estate for purposes of
taxation. The decision in each case, of course, rested upon
the theory that the legal situs of the personalty could be
regarded as at the owner's domicile.

The object of the act of 1887 was to bring within this

scheme of taxation any property within the state, left by non-resident decedents. That is its obvious office and we are not disposed to give, as against the executor, any stricter construction of this act, which imposes a special burden of taxation, than what its fair and ordinary reading compels. Neither the context, nor the object which the act was apparently designed to accomplish in amendment of the previous act of 1885, requires that its words should be construed in a sense different from the ordinary one; that when property within this state passes from non-resident decedents, in certain cases, it shall be subject to the tax specified in the act.

The order of the General Term should be affirmed, with costs.

All concur.

Order affirmed.