In the Matter of the Appraisal, under the Act in Relation to Taxable Transfers of Property, of the Property of DAVID WOLFE BISHOP, Deceased.

CORTLANDT F. BISHOP, Appellant; NATHAN L. MILLER, as Comptroller of the State of New York, Respondent.

*Transfer tax — imposed on the succession in case of residents, on the transfer of property in the case of non-residents — stock in foreign corporations, when subject thereto — the residence of a testator must be determined before an executor can be required to disclose the same.*

As to residents of the State of New York, the transfer tax is imposed on the right of succession, but, as to non-residents thereof, it is a tax on the transfer of property within the jurisdiction of the court.

Consequently stocks in foreign corporations are subject to the transfer tax if the decedent was a resident of the State of New York, but are not subject thereto if the decedent was a non-resident thereof.

If, therefore, the executor of the decedent denies that the decedent was a resident of the State of New York, the court has no power, until the question of residence has been determined, to require the executor to disclose what stocks of foreign corporations were owned by the decedent at the time of his death.

O'BRIEN, J., dissented.

APPEAL by Cortlandt F. Bishop from so much of a decree of the Surrogate's Court of the county of New York, entered in said Surrogate's Court on the 19th day of February, 1903, as directs him to answer certain questions relating to the property of David Wolfe Bishop, deceased.

*Herbert Parsons*, for the appellant.

*James J. McEvilly*, for the respondent.

PATTERSON, J.:

On the 30th of January, 1903, James J. McEvilly, as attorney for the Comptroller of the State of New York, presented his affidavit to one of the surrogates of the county of New York, in which affidavit it was stated that by an order entered in this proceeding on February 7, 1901, Robert Mazet, Esq., was appointed appraiser to fix the fair market value of the property which belonged to the late David Wolfe Bishop in his lifetime, and which was the subject of

a transfer tax; that on March 1, 1901, the appraisal of the estate of David Wolfe Bishop was commenced, and has been continued at subsequent hearings from time to time; that Cortlandt F. Bishop is the executor of the last will and testament of David Wolfe Bishop, deceased, and that at a hearing before the appraiser on January 14, 1903, said Cortlandt F. Bishop was called upon by McEvilly, as attorney for the Comptroller of the State of New York, to produce a full and complete inventory of the estate of the late David Wolfe Bishop; that Cortlandt F. Bishop admitted he had in his possession and under his control books and records from which such an inventory could be made; that the appraiser directed the witness to produce a complete list of the personal property of the decedent, or the books, records, papers, memorandum lists and other papers in the possession of the witness, or under his control, which showed in any way the assets of the estate of the late David Wolfe Bishop at the time of his death; that Cortlandt F. Bishop declined to comply with the directions of the appraiser; and in substantiation of this allegation there was also presented to the surrogate a copy of the stenographer's minutes of a hearing before the appraiser, from which minutes it appears that Cortlandt F. Bishop did refuse, under the advice of counsel, to produce books and papers or to make an inventory of the assets and property of which David Wolfe Bishop died possessed. It was also claimed that the action of the executor in refusing to produce a full and complete inventory or the books from which an inventory could be made up, was calculated to defeat, impair and prejudice a right of the Comptroller of the State of New York in this proceeding; and thereupon an order was prayed for, directing the said Cortlandt F. Bishop to show cause why he should not produce before the appraiser, Robert Mazet, Esq., a full and complete inventory of the assets of the estate of the late David Wolfe Bishop, or the books and records from which such an inventory could be made, or be punished for contempt for his disobedience. Upon that affidavit and a copy of the stenographer's minutes annexed thereto, the surrogate issued an order to show cause, returnable on the 6th of February, 1903, "why said Cortlandt F. Bishop should not produce before said Robert Mazet, Esq., the appraiser herein, a full and complete inventory of the estate of the

late David Wolfe Bishop, or the books and records from which such an inventory can be made ; or, in default of such production, be punished for contempt, and why such other and further relief should not be granted as may be just." On the return day of the order to show cause, Cortlandt F. Bishop, the executor, appeared and showed by affidavit that his testator was a resident of the State of Massachusetts, or at least presented facts and circumstances tending to show that his testator was a resident of the State of Massachusetts and not ·of the State of New York ; and the ground upon which he refused to make an inventory or produce the books of the decedent or to answer certain specific questions with reference to property of the decedent was, that the appraiser had no jurisdiction or authority to inquire into the affairs of the decedent or his property, except so far as would be required to bring to the knowledge of the surrogate such property of the decedent as was liable to a transfer tax under the provisions of the Transfer Tax Law of the State of New York. On deciding the motion the surrogate has held that the direction of the appraiser to the witness to prepare and produce a list of assets of the estate of the decedent was in excess of his, the appraiser's, powers ; but he also held that the witness should have answered a question put to him as to what stocks of non-resident corporations were owned by the decedent at the time of his death. On this decision the surrogate entered the order appealed from, which provides that the motion to punish Cortlandt F. Bishop for a contempt "for his failure to prepare a list of assets of the said estate or for the production of books and papers not presently in the possession of the said Cortlandt F. Bishop or under his control at the place of trial and which he was not required to produce by any subpœna served upon him, be and the same hereby is denied ; and it is further, Ordered that Cortlandt F. Bishop, on or before the 24th day of February, 1903, wait upon the appraiser herein, Robert Mazet, Esq., and answer all questions relating to the taxable assets of this estate and also the question, ' What stocks are they ? ' to wit, what stocks of corporations not organized under the laws of the State of New York were owned by the decedent at the time of his death, asked on page 20 of the minutes of the hearing held on January 21, 1903," under penalty of commitment for contempt.

It will be seen from the foregoing statement that the only question involved on this appeal is as to the power of the surrogate to punish a witness for contempt for not answering a specific question relating to property sought to be taxed under the Transfer Tax Law before it is completely adjudicated whether such property or the right of succession to it is taxable or not. The nature of the property is known. It is not necessary, therefore, to inquire as to that. The record before us is not as satisfactory as we would desire in order that the subject may be fully considered, but there is enough to raise the question as to the late David Wolfe Bishop having been a resident of the State of New York or a resident of the State of Massachusetts at the time of his decease. The appraiser, Mr. Mazet, states in the record that this question of residence is one that *is to be* passed upon, is undetermined, and that it must be determined before any tax can be imposed, either by way of succession or specifically on property passing under the will of David Wolfe Bishop.

If we take the affidavit of Mr. McEvilly as indicating the actual status of the matter, then we find that his representation upon which the surrogate's action is based is that the appraiser was appointed for the purpose of fixing the fair market value of the property which belonged to the late David Wolfe Bishop in his lifetime, *and which was subject to the payment of a transfer tax.* That is a proper statement of what the proceeding is, and it necessarily results from it that before a determination can be made as to whether the property is subject to taxation under the Transfer Tax Law of this State, it must be determined whether the late David Wolfe Bishop was a resident or a non-resident. As to residents, the transfer tax is on the succession and is imposed on the right of succession; but as to non-residents it is a tax on the transfer of property within the jurisdiction of the court. If the decedent were a non-resident, then those stocks in foreign corporations are not taxable here. (*Matter of James*, 144 N. Y. 6.) If David Wolfe Bishop were a non-resident and these foreign stocks consequently are not taxable here, there is no reason why the executor of the will should be put to the annoyance and expense of preparing inventories and exhibiting the condition of an estate as to items not taxable in the State of New York. Under the Transfer Tax Law, the executor is bound to pay a tax properly imposed. The first thing required is

to bring him within the operation of the law imposing the tax, and until he is brought within the operation of that law he has the right to say that he will make no disclosure of his private affairs or the affairs of his testator. Here, the liability cannot be determined until it has been judicially ascertained that the testator was a resident of the State of New York.

The consideration of this question is not aided by any authority directly in point, but I know of no better way of summing up the views I have upon the subject than by referring to those expressed by ANDREWS, J., in *Matter of Enston* (113 N. Y. 177). That learned judge says, with respect to the Collateral Inheritance Tax Law of 1885, what is still true of the Transfer Tax Law, that it is a special tax. It is not a law which is to be construed with reference to the general purposes of taxation where every citizen should supply his personal contribution to the support of the government which protects him. It is a peculiarly special law of taxation; it was unknown to the law of this State until about twenty years ago. To use the language of Judge ANDREWS in the case cited: "The tax imposed by this act is not a common burden upon all the property or upon the People within the State. It is not a general, but a special tax, reaching only to special cases and affecting only a special class of persons. The executors in this case do not, therefore, in any proper sense, claim exemption from a general tax or a common burden. Their claim is that there is no law which imposes such a tax upon the property in their hands as executors. If they were seeking to escape from general taxation or to be exempted from a common burden imposed upon the People of the State generally, then the authorities cited by the learned counsel for the People, to the effect that an exemption thus claimed must be clearly made out, would be applicable. But the executors come into court claiming that the special taxation provided for in the law of 1885 is not applicable to them, *or the property which they represent.* In such a case they have the right both in reason and in justice, to claim that they shall be clearly brought within the terms of the law before they shall be subjected to its burdens. It is a well-established rule that a citizen cannot be subjected to special burdens without the clear warrant of the law." (Citing cases.)

The situation of this executor is stated in the quotation above

made. He resists the imposition of a tax on property of his testator, alleging the ground to be that that property is not taxable under the Transfer Tax Law because his testator was a non-resident of the State. Now, before he is subjected to an inquiry as to these particular assets of that estate, he should be brought within the meaning and intent of the law by having it established that the testator was a resident and not a non-resident. It will not do to say that the matter of residence and the question of liability of particular property to taxation may be considered at the same time. That simply begs the whole question. The subject of liability to taxation as to the particular stocks here involved depends upon residence. If the residence were not in the State of New York there is no liability to taxation on those stocks in foreign corporations. It is an inversion of the whole proceeding to say that one must answer before he is before the court in a position which requires him to answer.

I think the decision of the surrogate was wrong, confining it to the one point raised on this appeal, and that the order, so far as appealed from, should be reversed, with costs to the appellant, and that the executor should not be compelled to answer with reference to stocks in the foreign corporations until the question has been determined *by the surrogate* as to the residence of David Wolfe Bishop.

VAN BRUNT, P. J., INGRAHAM and HATCH, JJ., concurred; O'BRIEN, J., dissented.

Order reversed, with costs to appellant.