HENRY M. TILFORD, EXECUTOR, ETC., PROSECUTOR, v.
SAMUEL D. DICKINSON ET AL.

Argued November Term, 1909—Decided February 28, 1910.

A testator died domiciled in the State of New York, leaving personal
property in New York, and also in New Jersey; and leaving be-
quests to persons which were exempt, and bequests to persons
which were taxable under our inheritance tax statute. *Pamph.
L.* 1906, *p.* 432. *Held,* that the executor could not relieve the
property in New Jersey from taxation by applying it to the pay-
ment of exempt legacies, and by paying the taxable legacies out
of the New York property.

On *certiorari* to the secretary of state as register of the
Prerogative Court of this state, and the comptroller of the
treasury of this state, requiring them to send up the record
of the action of the register in pressing and levying a collat-
eral inheritance tax upon the estate of Wesley H. Tilford,
deceased.

Before Justice REED.

For the prosecutor, *James & Malcolm G. Buchanan.*

For the state, *Edmund Wilson,* attorney-general.

REED, J. Wesley H. Tilford died on March 9th, 1909,
while a resident of the State of New York. He died pos-
sessed of personalty worth $11,626,897.98, of which
$7,601,962.50 was composed of shares of stock of certain cor-
porations incorporated under the laws of New Jersey.

The decedent left a will, of which he appointed Henry M.
Tilford sole executor. The will was probated, and letters
testamentary were issued in the State of New York. By this
will the testator bequeathed to certain collateral relatives
legacies amounting to $4,150,000. The · residue went to
brothers and sisters of the decedent, one of the brothers being
the executor and the prosecutor of this writ. By the will, the

executor was authorized either to sell and convert the property or any of it, and pay the legacies out of the proceeds, or to transfer the securities themselves to the legatees in payment of the legacies.

The executor has paid the collateral inheritance tax due to the State of New York. The executor has elected to pay the $4,150,000 legacies to the collateral legatees, out of that portion of the estate which does not comprise shares of stock in New Jersey corporations, with the exception of eight hundred and forty-one shares of the capital stock of the Standard Oil Company, which he has used to assist in paying the legacies to the collateral legatees. The remainder of the estate, including all the shares of stock of the New Jersey corporations (except the eight hundred and forty-one shares of Standard Oil Company stock already mentioned), the executor has elected to transfer to himself as residuary legatee, he being a brother of the testator, and to another brother and to a sister, who are also legatees.

The register of the Prerogative Court appointed an appraiser to determine the testator's estate. The appraiser fixed the value of the stock of the New Jersey corporations at the sum of $7,601,962.50, but made a deduction from the value of the stock of these corporations in the ratio provided for by the act of 1909 (*Pamph. L.*, p. 236), and fixed the tax at $138,378.52, this being calculated upon the reduced valuation, under the statute, of $2,767,570.47.

There is no contest respecting the imposition of a collateral inheritance tax upon the value of the eight hundred and forty-one shares of Standard Oil Company stock, which was used by the executor in the payment of the collateral legatees. The contest is in respect to the remainder of the stock of the New Jersey corporations, devoted by the executor to the payment of legacies to persons exempt from taxation under our statute, the question being whether this property is exempt, although the property so used had its *situs* in this state at the death of the decedent.

The question of the taxability of this property arises under the act of 1894 (*Pamph. L.*, p. 318), as amended by section

1 of the act of 1906. *Pamph. L., p.* 432. The amended section reads thus: "A tax shall be and hereby is imposed upon the transfer of any property, real or personal, of the value of $500 or over, or of any interest thereon, or income therefrom, in trust or otherwise, to persons or corporations in the following cases:

"*First.* Where the transfer is by will or by the intestate laws of this state from any person dying seized or possessed of property while a resident of this state.

"*Second.* When the transfer is by will or intestate law of property within the state, and the decedent was a non-resident of the state at the time of his death.

"All property passing to  *  *  *  a father, mother, husband, wife, child, brother or sister, or lineal descendant born in lawful wedlock, or the wife or widow of a son, or the husband of a daughter, shall be exempt from the payment of taxes under this act, but no other exemption of any kind shall be allowed."

The prosecutor insists that the property in this state which was by the New York executor turned into the residuum of the estate, is exempt from taxation, because it passed to a brother and sister of the decedent.

In the argument addressed to the court upon this point much stress was laid upon the construction placed by the New York Court of Appeals upon their statute of 1887 in the case of the *Matter of James,* 144 *N. Y.* 6. The statute so construed was an amendment of a previous New York act of 1885, which latter act by the construction put upon it in the case of *In re Enston,* 113 *Id.* 174, did not impose in clear terms taxes upon the transfer by will of property in New York owned by a decedent domiciled elsewhere.

The amended act of 1887 was designed to include such transfers made by the will of a non-resident testator of property within the State of New York. The amended act provided "That all property which shall pass by will or by intestate laws of this state from any person who might die seized or possessed of same while a resident of this state at the time of death, which property or any part thereof shall

be within this state, shall be and is subject to a tax of five per cent. on every $100 of clear market value of such property."

This statute was construed, as already remarked, *In re James, supra.* The question therein involved was identical with the question presently propounded. A decedent domiciled in Great Britain left property there, as well as in the State of New York. He gave legacies to collateral relatives, and left the residue of his estate to his two brothers. The executor paid the collateral legacies out of the property situated in Great Britain, leaving the property situated in New York to go into the residuary estate, and thus to decedent's brothers. The New York court held that the devotion of the New York property to the payment of decedent's brothers, who were in the exempt class under the New York statute, rendered that property immune from the imposition of collateral tax under the New York statute. In the opinion delivered in that case it was said: "If the executor determines to pay the legacies from the British estate, the American estate is thereby freed from the burden of a special tax, the imposition of which depends upon the fact of the succession by the legatee to some property which is within the state. If the American estate is appropriated to persons who are within the excepted degrees of relationship to the testator, the right to claim the tax from the executor is gone."

The Supreme Judicial Court of Massachusetts has announced a different view in respect to the power of an executor to so appropriate property as to affect the taxability of the transfers under the Massachusetts statute. That statute provides "that all property * * * which shall pass by will * * * by deed, grant, sale or gift, made or intended to be made to take effect in possession or enjoyment after the death of the grantor * * * shall be subject to a tax of five per cent. of its value."

In *Hooper* v. *Bradford*, 178 *Mass.* 95, it was held that taxes under the above statute were to be assessed on the value of testator's property at the time of his death, and that income therefrom arising thereafter but before distribution of his estate, was not to be included in the tax value. It was

said that the words of the statute meant value of the property at the time it passed, and that it passed and become vested at the death of the testator.

In the later case of *Kingsbury* v. *Chapin,* 196 *Mass.* 533, following the rule previously enunciated that a property passed and became vested at the death of the decedent, the Massachusetts court held that the executor of a decedent, who died in New Hampshire leaving property in Massachusetts as well as in New Hampshire, could not use stock held by the decedent in Massachusetts corporations to pay debts and legacies exempted from succession tax, and so relieve the property in Massachusetts from the imposition of such a tax. The rule so announced by the Massachusetts court in *Kingsbury* v. *Chapin, supra,* has subsequently been adopted by the Court of Appeals of the State of New York, so far as it applies to cases of intestacy. *In re Ramsdill,* 190 *N. Y.* 492.

The Court of Appeals in the last-mentioned case, however, announced its adherence to the rule propounded *In re James, supra.* It distinguished distribution of estate under the intestate law and the administration of estates under a will. In the former, it was said, the distributee takes an undivided interest in the whole estate, and if a part of it happens to be within our jurisdiction, he can only get his share of what is here, under our laws, through our courts. But in case of legacies ordered to be paid by will, if the foreign executor can pay them out of the assets in another state, he can do so, and he will not be coerced into paying them out of the assets in this state for the purpose of levying a tax here.

The legislation in this, as in many other states which provide for a succession tax, has followed closely the statutes of New York; and it is insisted that the decision of the New York court *In re James, supra,* construing the statute of 1887, should control us in construing the act of 1885 as amended by the act of 1906. The phrasing of the latter act, however, is literally quite different, although substantially very similar to the New York statute. Its lingual shape differs much more from the act of 1887 than our act of 1894 differs from the New York act of 1885; yet in construing

our act of 1894 our Court of Errors and Appeals refused to follow the New York construction of the New York act, because of the slighter changes in the language of the two acts. *Neilson* v. *Russell,* 47 *Vroom* 655. Our act of 1906 places a clause providing for the exemption of certain property from the operation of the act, in a paragraph separate from that portion of the section defining the instances where a tax should be imposed. This, in comparison with the New York act, shows a difference of verbiage which excludes the application of the rule that in adopting the legislation of a foreign state we adopted the construction of the foreign statutes by the courts of that jurisdiction.

The question then is, what is the significance to be assigned to our statute in respect to the question involved? Our act of 1906 (*Pamph. L., p.* 432), while differently phrased, does not differ in substance from the statutes of the two states construed in the cases already cited. The statute imposes a transfer or succession tax upon all property transferred by will, or by the intestate laws in the instances mentioned, except when the property passes to one of the exempted class of persons or objects. When a decedent is a non-resident, and a portion of his estate has its *situs* in this state, it is settled by the cases already cited that upon his dying intestate, and there are distributees belonging to both classes—taxable and exempt—that portion of his estate within this state is taxable. The extent of its taxability is now fixed by our statute of 1909 (*Pamph. L., p.* 236) which statute, however, was not in existence at the date of the death of the present decedent.

Speaking of intestate estates, I am inclined to think that apart from the statute, the logical rule to be adopted where property is situated as in this class, is the rule provided for by our statute. The theory upon which it rests is that each distributee has an undivided interest in all the assets of an estate, and that no particular portion of such assets passes to any particular distributee. Therefore, when it is ascertained what portion of the whole estate goes to all of the collateral distributees as a class, it will be presumed that such proportion of the New Jersey property goes to such class of collat-

erals as the property in New Jersey bears to the property in New York—it being assumed that equal proportions of the property in both states will be devoted to the payment of collateral distributees. This rule was so applied in the present assessment.

The question now presented is why the rule applied in intestate estates by the courts of New York and Massachusetts should not be applied, as it is in Massachusetts, in cases of testacy. The argument urged against the application of the same rule is that in the present instance, the New Jersey property "passed" to the brother and sister of the decedent, and so is immune from taxation. By the word "passed" is meant that the executor took this property, or the proceeds of its sale, and placed it in a trust fund for the sister and brother, and in the residuary fund provided for by the will.

But this action of the executor was in substance what an administrator of an estate would do, if he turned over to the distributee money arising from the sale of a particular portion of the estate, or if he distributed specific securities by agreement among the various distributees.

It may be admitted that under a will, specific property in this state may pass to a legatee in the exempted class, and so pass as to evade taxation in this state; but these instances are confined to legacies specifically transferred directly to the beneficiary by force of the terms of the will.

Apart from strictly specific legacies, I am unable to perceive any substantial ground for differing the administration of an estate by an administrator from the administration of an estate by an executor, in respect to the question now presented. Technically, of course, by will the estate goes to the executor; but it goes to him as trustee for all who are designated beneficiaries in the will which he is appointed to execute. Equity will compel him to administer the estate for the benefit of the legatees and devisees. His required assent to the payment of the legacies may be compelled in equity. 2. *Wms. Ex.* 1238.

Indeed his required assent is without substance, because by the statute of many states, including New York and New

Jersey, the executor is compelled to pay the legacies within a stipulated period. 2 *Woerner Am. L. of Admin.* 997.

The legatee, before the assent of the executor, had such an inchoate title as passed to his personal representative in case of his decease. *Redf. Wills, part 2, p.* 565.

Indeed, the schemes of administration in both testate and intestate estates are designed to secure, in the first instance, the payment of the debts of the decedent, and then to secure to the beneficiaries the remainder of the estate, whether such beneficiaries are designated in the will or by the statute of distribution in cases of intestacy. When the designated beneficiaries are, as in this case, general and not specific legatees, no legatee takes any specific assets of the testator's estate. He does take an interest in the entire estate, to be ascertained upon administration after the application of the estate to the payment of debts, by the distribution of the remaining estate according to the terms of the will.

The bequest to testator's sister for life, and to a brother for life, and of the residuum to another brother, did not pass to either any particular assets, and so did not pass *in specie* the New Jersey property.

Nor did the authority conferred by the will upon the executor to distribute securities at their cash value to the legatees, in my judgment, modify this conclusion. No particular portion of the estate was by the testator devoted to any particular legatee. The interest which passed on the death of the testator was only to have some property delivered, or money paid, in the course of administration.

The conclusion at which I have arrived is that the appraisement and assessment brought up by this writ should be affirmed.