In the Matter of the Transfer Tax upon the Estate of WILLIAM BARBOUR, Deceased.

THE COMPTROLLER OF THE STATE OF NEW YORK, Respondent; THOMAS BARBOUR and Others, as Executors, etc., and Others, Appellants.

First Department, December 13, 1918.

**Tax — transfer tax — presumption of residence of non-resident created by section 243 of the Tax Law, as amended, is not conclusive — evidence of residence — statutes — construction — evidence of legislative history of statute — double taxation — basis of right to tax estate of deceased resident — taxation of property of non-resident.**

Section 243 of the Tax Law, as amended by chapter 551 of the Laws of 1916, providing that " every person shall be deemed to have died a resident and not a non-resident of the State of New York if and when such person shall have dwelt or shall have lodged in this State during and for the

greater part of any period of twelve consecutive months in the twenty-four months next preceding his or her death," creates a mere disputable presumption of residence which may be overcome by proof.

Evidence examined, and *held,* ample to overcome the presumption arising from the above provision of the statute and to establish that the testator at the time of his death was a resident of the State of New Jersey.

Recourse may be had to the legislative history of a statute in order to discover the intention of the Legislature.

Although the Legislature may possess power to provide double taxation, it should be avoided by the court whenever it is possible within reason to do so.

The right of the State to tax the estate of a deceased resident is upon the ground that by the favor of the State a right of succession in such property is accorded and having granted such privilege of succession the State has the undoubted right to curtail the same by taxation.

Real property situated within the State owned by a non-resident is subject to taxation. And so, too, any personal property of a deceased person which may be physically present at the time of death can be laid hold of by the State for the purpose of taxation under our statutes. But as to personal property of a non-resident of this State, which property is not physically within the State, no such power exists.

APPEAL by the defendants, Thomas Barbour and others, as executors, and others, from an order of the Surrogate's Court of the county of New York, entered in the office of said Surrogate's Court on the 13th day of June, 1918, adjudging the testator to be a resident of the State of New York for the purposes of the transfer tax and remitting the estate for appraisement as that of a resident.

*John H. Corwin* of counsel [*Harris, Corwin, Moffat & Sheck,* attorneys], for the executors, appellants.

*James O'Malley,* for the beneficiaries, appellants.

*John B. Gleason* of counsel [*Lafayette B. Gleason,* attorney], for the respondent.

MERRELL, J.:

The executors of the last will and testament of decedent, as well as certain beneficiaries under said will, have appealed from an order of the Surrogate's Court of New York county, Mr. Surrogate COHALAN presiding, ordering and adjudging that the deceased be deemed to have died a resident of the State of New York, and providing for the taxation of his

estate under the Transfer Tax Law as a resident of the State of New York.

The appellants assign error in the determination of the surrogate that said decedent, at the time of his death, was a resident of or domiciled within the State so as to render his estate liable to taxation under the Transfer Tax Law. The appellants contend that, as a matter of fact, the testator did not so lodge or dwell within the State as to render his estate taxable. Moreover, the appellants insist that the construction placed upon the statute by the order appealed from, creating a conclusive presumption of domicile of the decedent by reason of lodging or dwelling within the State, was erroneous, appellants contending that said enactment merely created a presumption of residence which he might overcome by evidence to the contrary.

William Barbour, the testator, was born in the city of New York in September, 1856. At the age of five years, his parents removed to the city of Paterson, N. J., taking with them their son, the testator. He continued thereafter to reside with his parents at Paterson and at its suburb, Warren Point, in Bergen county, N. J., for many years. As a boy he attended school at Paterson, and in 1883 married at Warren Point in that State. After his marriage he continued to reside at Warren Point until he sold his property there in 1905. During these years of his married life he spent a part of each year at his New Jersey residence, but sometimes during the winter stopped at the Navarro Flats and at the Savoy Hotel in New York city. Some winters were spent at Warren Point, and his summers were, for the most part, passed at Monmouth Beach, N. J., where he had located his summer home. However, during all this period he maintained a residence at Warren Point and, the evidence shows, himself supported a church at that place. During his entire maturity, and until his death, he was actively engaged in the manufacture of thread in the State of New Jersey, and was closely associated in the creation and management of a large number of business and moneyed institutions in that State. About the time he disposed of his house at Warren Point, he bought a large and expensive " cottage " at Monmouth Beach, N. J. Later he sold this residence, having in 1908 acquired a magnificent

country seat on Rumsen road in the town of Fairhaven, Monmouth county, N. J.   While spending a large part of his winters in the city of New York, it was his invariable custom, during his ownership of the Monmouth Beach residence and after his subsequent ownership of the country seat in the town of Fairhaven, to leave the city of New York about the first of May in each year and open his home in New Jersey and, with his family, spend the summer and autumn months there, until after election time, when he returned to New York city for the winter.   In 1904 he erected a house on Fifty-third street in the city of New York, and thereafter usually came there to pass the winter months.   From 1895 until his death he had a camp on Tupper lake in the Adirondacks, where he was accustomed to spend some time each spring in fishing and in the fall in hunting.   From the time of reaching his majority and until his death he invariably voted in the State of New Jersey.   He paid poll taxes and a resident personal tax in New Jersey for many years.   Until his death he was taxed as a resident of the State of New Jersey, and in the State of New York was taxed as a non-resident.   From the time of the enactment of the Federal Income Tax Law he made his returns to the United States Collector of Internal Revenue at Camden, N. J., and therein invariably described himself as a resident of Fairhaven, Monmouth county, N. J.   In the years 1903 and 1906 he filed with the tax officials in New York city his sworn affidavit disclaiming liability to taxation as a resident of New York for the reason stated in his affidavit, that he resided in Monmouth county, N. J.   He served as a delegate from the State of New Jersey to every national convention of the political party with which he was affiliated from the year 1892 to 1916, and from 1895 to 1898 was a colonel upon the military staff of the Governor of the State of New Jersey.   In 1892 he became a candidate of his party for the office of Representative in Congress from the sixth district of New Jersey.   In the offices of the clerks of the counties of Bergen, Passaic and Monmouth, in the State of New Jersey, are large numbers of deeds of conveyance wherein the decedent is named as grantor, he being invariably described therein as a resident of the State of New Jersey.   Numerous other instruments in writing were produced before the surrogate,

ranging from deeds of conveyance to certificates of dissolution, sworn affidavits, oaths of office, and other written instruments almost without number, executed by the decedent, and all bear witness to his declaration of residence in the State of New Jersey. From 1908 to 1915 he was a director of the Hamilton Trust Company of Paterson, N. J., and annually filed his oath with the Commissioner of Banking and Insurance of the State of New Jersey, wherein he described himself as a resident of said State. Invariably he described himself to be a resident of the State of New Jersey, and invariably he instructed attorneys preparing papers for his execution, both in the State of New Jersey and in the State of New York, to describe him in such documents as a resident of the State of New Jersey. On April 27, 1912, he executed his last will and testament, and in this instrument he described himself as a resident of Fairhaven, in the State of New Jersey, temporarily residing in the city of New York. The record leaves no question as to the intent of the decedent, often expressed, to be and remain a resident of the State which he had called home from his early boyhood until his death. There he had passed his youth, and there had been the scenes of his numerous business activities. There he had always exercised his right of suffrage, and there he had been honored by the political party to which he was attached  Upon his death his remains were deposited in his own plot in the family burying ground at Paterson, N. J. Under his will a large number of charities were the recipients of his bounty, said instrument containing many bequests to charitable institutions in the State of New Jersey, and none to any similar institutions in the State of New York. The evidence points irresistibly to the fact that the deceased intended to preserve his residence and domicile in the State of New Jersey, and shows beyond question that such was his residence and domicile at the time of his decease.

While temporarily absenting himself from the home of his youth and more active years, while passing the winters in the city of New York and a portion of his summers in pursuit of the sports afforded by the Adirondack wilderness, the decedent at no time manifested any intention of changing his residence from the State of New Jersey. Not alone by his declarations

repeatedly made in the course of his business and political activities, in numerous and varied documents, many of them under the solemnity of an oath, but also by his actual physical presence in the State of New Jersey during a large portion of each year, and by his every act until his final end, did the testator manifest an intention to remain a domiciled resident of the State of New Jersey. The fact that a large part of the year may have been spent away from his home in no degree affected his true residence and domicile.

The respondent, the Comptroller of the State of New York, makes little attempt to deny the almost indisputable fact that the testator intended and was in fact a domiciled resident of the State of New Jersey at the time of his death, but relies upon the provisions of the Transfer Tax Law of the State declaring that a person dwelling or lodging in this State during the greater part of any period of twelve consecutive months in the twenty-four months next preceding his death shall, for the purposes of article 10 of the Tax Law and for the just imposition of the transfer tax, be deemed to have died a resident and not a non-resident of the State of New York. The record discloses that the greater part of the year prior to his death the testator had spent in the State of New York. The amended statute upon which the Comptroller relies was enacted in 1916, being chapter 551 of the Laws of 1916 (amdg. Tax Law [Consol. Laws, chap. 60; Laws of 1909, chap. 62], § 243), and, so far as pertinent to the matter under consideration, provides as follows: " For any and all purposes of this article and for the just imposition of the transfer tax, every person shall be deemed to have died a resident, and not a nonresident, of the State of New York, if and when such person shall have dwelt or shall have lodged in this State during and for the greater part of any period of twelve consecutive months in the twenty-four months next preceding his or her death; and also if and when by formal written instrument executed within one year prior to his or her death or by last will he or she shall have declared himself or herself to be a resident or a citizen of this State, notwithstanding that from time to time during such twenty-four months such person may have sojourned outside of this State and whether or not such person may or may not have voted

or have been entitled to vote or have been assessed for taxes in this State; and also if and when such person shall have been a citizen of New York sojourning outside of this State. The burden of proof in a transfer tax proceeding shall be upon those claiming exemption by reason of the alleged nonresidence of the deceased. The wife of any person who would be deemed a resident under this section shall also be deemed a resident and her estate subject to the payment of a transfer tax as herein provided, unless said wife has a domicile separate from him."

The Comptroller insists that the provision of the statute above quoted, that a person *shall be deemed* to have died a resident of this State when he shall have dwelt or have lodged here for the greater part of any period of twelve consecutive months in the twenty-four months next preceding his death, is conclusive upon the appellants, and that the word " deemed " here means the same as " taken as if." In other words, the Comptroller's position is that while the decedent may have, in fact, been a domiciled resident of the State of New Jersey at the time of his death, if he shall have dwelt or have lodged within the State of New York for the period described in the statute, his estate shall be subject to taxation here. In short, for the purpose of taxation, if the testator came within the provisions of the statute, notwithstanding his actual residence and domicile in another State, his estate becomes taxable here. The Comptroller attempts to justify such interpretation of and taxation under the provisions of said act as within the plenary power of the Legislature to enact laws for the imposition of taxes on persons and property within the boundaries of the State. I do not believe the Legislature intended any such drastic rule as that for which the Comptroller contends. The provision of the statute above quoted that " The burden of proof in a transfer tax proceeding shall be upon those claiming exemption by reason of the alleged nonresidence of the deceased," would seem strongly to indicate that the Legislature, in using the words " shall be deemed," intended merely to create a presumption of residence, where a person died under the circumstances mentioned in the statute, and that, at most, the word " deemed " created a disputable presumption that such a person died a resident and not a non-resident of the State of

New York. To construe this statute as meaning that every person's estate shall be subject to tax where the person shall have, during the time mentioned in the statute, dwelt or lodged within the State, seems to me quite unreasonable. Were the statute to be construed as contended for by the Comptroller, the estate of a citizen of the State of California temporarily at the city of New York on a business errand or errands compelling him to lodge here during the greater part of any period of twelve consecutive months in the two years preceding his death, and who happens to die here, would be liable to taxation under the statute. And to pursue the absurdity further, the estate of the wanderer might be made taxable in other States of the Union by the enactment of laws no more ridiculous. There can be nothing to prevent the full taxation of decedent's estate in the State of New Jersey, of which he was unquestionably a domiciled resident at the time of his death. In my opinion, the word " deemed," as used in this statute, creates merely a presumption of residence for the purpose of taxation. The Legislature, by the later provision, casting upon the person claiming exemption by reason of alleged non-residence the burden of proof thereof, evidences a legislative intent to create a mere presumption of residence as the result of the circumstances referred to in the statute. Such presumption, in the case at bar, was clearly overcome by the ample proof offered in the proceedings before the surrogate, that, at the time of his death, the testator was a resident of the State of New Jersey. His estate was not subject to taxation in the State of New York.

Recourse may be had to the legislative history of the amendment of 1916 to discover what the Legislature intended by the language used. As originally introduced, the bill contained the word " conclusively " after the words " shall be deemed," and, as originally introduced, that portion of the bill read as follows: " For any and all purposes of this article and for the just imposition of the transfer tax, every person (and also his wife) shall be deemed conclusively to have died a resident, and not a non-resident, of the State of New York, if and when such person shall have dwelt or shall have lodged in this State during and for the greater part of any period of nine consecutive months in the twenty-four months next

preceding his or her death," etc. (Senate Bill Int. 1262, introduced March 29, 1916.)

And, as originally introduced, the provision that "the burden of proof in a transfer tax proceeding shall be upon those claiming exemption by reason of the alleged nonresidence of the deceased" did not appear. Before final passage the bill was amended by striking out the word "conclusively" following the words "shall be deemed," and adding the provision last above quoted with reference to the burden of proof upon those claiming exemption by reason of the alleged non-residence of the deceased. These facts are most significant and furnish strong evidence that the Legislature did not, by the use of the words "shall be deemed," intend to prohibit proof to overcome the presumption and to show actual non-residence of the deceased. Such history of the enactment robs it of that conclusiveness upon the question of residence for which the Comptroller contends. Such a construction as that for which respondent contends would be most unreasonable and unjust. It would subject the estate of a deceased person to double taxation, and it is not inconceivable that through such a scheme of taxation the estate might be greatly depleted or even entirely exhausted. If, as before suggested, decedent's estate be taxable here and is also subjected to a tax in the acknowledged State of his domicile, New Jersey, which latter is, according to the brief of the appellants herein, now an accomplished fact, we will have a double taxation of this estate. Unquestionably the Legislature may possess power to provide double taxation, but, as stated in *Matter of Cooley* (186 N. Y. 220, 227): "It is plain that, measured by ordinary principles of justice, the result suggested would be inequitable and might be seriously burdensome.

"Double taxation is one which the court should avoid whenever it is possible within reason to do so. (*Matter of James,* 144 N. Y. 6, 11.)

"It is never to be presumed. Sometimes tax laws have that effect, but if they do it is because the Legislature has unmistakably so enacted. All presumptions are against such an imposition. (*Tennessee* v. *Whitworth,* 117 U. S. 129.)

"The law of taxation is to be construed strictly against the State in favor of the taxpayer as represented by the executor

of the estate. (*Matter of Fayerweather*, 143 N. Y. 114.) "
(*Matter of Swift*, 137 N. Y. 77, 87.)

If this statute was really intended for more than a mere
rule of evidence, the Legislature might have as well named a
month's or a single day's lodging within the State of New York
as ground for subjecting the estate of a deceased person to
taxation.

The right of the State to tax the estate of a deceased resident
is upon the ground that by the favor of the State a right of
succession in such property is accorded, and having granted
such privilege of succession the State has the undoubted right
to curtail the same by taxation, and so, appropriating a part
of the estate with which to bear the expenses of the govern-
ment under whose protection the estate has been accumulated
and has existed. Unquestionably real property situated within
the State owned by a non-resident is subject to taxation, as the
property itself is here. And so, too, any personal property
of a deceased person which may be physically present at the
time of death can be laid hold of by the State for the purpose
of taxation under our statutes. But as to personal property
not physically within the State of New York, of a non-resident
of this State, no such power exists. The very basis of such
taxation, which is the right of succession, is wanting, because
the succession thereto is created and governed by the law of
the foreign State of which the deceased was a citizen. (*Matter
of Embury*, 19 App. Div. 214, 218; affd., on opinion below,
154 N. Y. 746.)

As was said by Judge CULLEN in *Matter of Gihon* (169 N. Y.
443, 447), it is " a tax not on property, but on succession;
that is to say, a tax on the legatee for the privilege of succeed-
ing to property. (*Knowlton* v. *Moore*, 178 U. S. 41.)"

The right of the State to impose any tax is based on its
dominion over the property situated within its territory. As
was said by GRAY, J., in *Matter of Bronson* (150 N. Y. 1, at
the top of page 8): " It is obvious that the State had no
jurisdiction over a right of succession which accrues under
the laws of the foreign State. That is something in which this
State has no interest, and with which it is not concerned."
(*Matter of Swift*, 137 N. Y. 77; *Matter of Merriam*, 141 id. 484.)

In *Matter of Houdayer* (3 App. Div. 474; 150 N. Y. 37)

this court held that the power of the State to tax is limited to persons, property and business within its jurisdiction. In discussing, in *Matter of Houdayer*, the right of the State to impose a transfer tax, Mr. Justice BARRETT said, at page 478: *" If it is upon the right of succession, then plainly it is a tax upon a right granted by a foreign State.* If it is not a tax upon such right, then *it is simply a tax upon property acquired through the instrumentality of a foreign succession law. And that in substance is what it is.* In common parlance it is a succession tax. But in legal parlance it is, as was intimated in the *Matter of James* (144 N. Y. 10), ' a tax upon property in this State passing from non-resident decedents.' The latter case distinctly holds that ' It is the property of the decedent which is sought to be subjected to the tax; ' and that ' *The right of the State to impose the tax is based upon its dominion over what property is situated within its territory.*' "

The analogy is suggested between the situation here and that of liability to jury duty of a person who resides in another State, but who conducts business here and has a substantial residence here, although his domicile may be elsewhere. It has been held that such a person can be compelled to serve as a juror here because of and as a return for the protection afforded by the State. (*People ex rel. Turner* v. *Plimley,* 8 App. Div. 325.)

Such liability to jury service comes through certain unequivocal statutory enactments aimed at the correction of evils arising from the common practice of persons who were in fact residents of the city of New York seeking to avoid the burden of jury service by acquiring a domicile elsewhere — usually at their summer abode; that while their business and social activities were here, they, for the purpose of escaping jury duty and taxation, voted and established a domicile elsewhere. No such ulterior purpose is charged against the decedent. He has since his early boyhood consistently resided in New Jersey. This is not a case of tax-dodging. The deceased, so far as the evidence discloses, paid all taxes assessed against his property, real and personal, to which he was subjected as a non-resident. All that his personal representatives, not unreasonably, ask is that the State having dominion over, and by virtue of the laws of which others

succeed to his estate, shall alone be permitted to tax the transfer. No question can be raised as to the good faith of decedent in maintaining his residence in New Jersey. A very different situation is presented from that of the tax- or jury-dodger. The evil corrected and the jury service required by the Code provisions was concerning a duty of citizenship arising during the lifetime of the citizen when he was in the enjoyment of the State's protection to his person and property. The situation with which we are dealing is much different. Here is an attempt to seize upon for taxation, not only decedent's property, real and personal, which was physically present and under the protection of the State at the time of death, but also all other personal property of which the decedent was then possessed and which passed only by virtue of certain laws of another State permitting the beneficiaries under decedent's will to succeed thereto.

The taxation of inheritance is of long standing. In England, death duties have been imposed for centuries. Other European countries have adopted such form of indirect taxation, under such various names as death duties, legacy taxes, succession duties, inheritance taxes, probate duties, estate taxes, privilege taxes, etc. In 1797 our Federal government imposed a legacy tax. (1 U. S. Stat. at Large, 527, chap. 11.) Since then several acts of a similar character have been passed by Congress. The present Federal statute providing an estate tax upon the transfer of the net estate of a decedent was enacted in 1916. (39 U. S. Stat. at Large, 777, chap. 463, tit. 2, as amd.) Under former statutes the right of the Federal government to impose a tax of this character has been questioned, because of the fact that such a tax is upon the right of succession, and which right may alone be regulated by a State. But in *Knowlton* v. *Moore* (178 U. S. 41) it was pointed out that such a tax is imposed upon the transmission or receipt of the property, rather than upon the right to regulate such transmission or receipt after death, and the court there held the act constitutional, notwithstanding the devolution of the property transferred was under the control of the State of New York, where the testator in that case was domiciled. I do not think the principle enunciated in *Knowlton* v. *Moore* can be applied to the instant

case as authority for a taxation of this estate by the State of New York.    While technically the tax may be considered as resting upon the actual passing of the estate by death, rather than upon the right to regulate the same, and, therefore, in *Knowlton* v. *Moore* it was held that the Federal government possessed the right to impose such transfer tax, nevertheless as between the State of New Jersey, where testator had resided and been domiciled practically all of his lifetime, and the State of New York, where he was temporarily staying at the time of his death, it cannot be said, under the authorities hereinbefore cited disapproving of double taxation and providing for taxation of transfers exclusively by the State having dominion over the property transferred and regulating the succession, that the State wherein testator was temporarily staying when his death occurred should have authority to impose the tax.    At common law there was no right of succession in property.    When a person died his property reverted to his sovereign.    Except for statutory enactments of the various States permitting the disposition of property by will or in case of intestacy that the property of a deceased person shall pass to the persons named in the statute, the property of a person dying would revert to the State in which he resided.    By virtue of the laws of the State of New Jersey, the property of decedent passed under the provisions of his will.    Not only the power to regulate the succession, but the very transmission and receipt itself of the property transferred rested upon the laws of the State of New Jersey. To that State belongs the exclusive right to impose the tax upon such transfer.

With reference to the power of the Legislature to enact a statute of the force which the Comptroller seeks to give to the amendment of 1916 to the Transfer Tax Law, while it is not open to serious dispute that it has power to enact that one fact shall be evidence of another, it is a self-evident proposition that the Legislature cannot make so that which is not so.    When, as here, the statute says that under the circumstances named residence shall be *deemed* to exist, and the fact is that it does not exist, the statute does not make the fact otherwise than it is.    At most, it creates a presumption which may be overcome by evidence to the contrary.

I think the most that can be said of this statute is that the facts therein mentioned with reference to a person dwelling and lodging within the State, during the period mentioned, create a mere disputable presumption of residence, liable to be overcome by evidence to the contrary. The evidence produced upon this hearing by the executors of testator's will destroyed any presumption of residence in the State of New York arising from the fact of testator dwelling and lodging here during the period preceding his death.

The order appealed from should be reversed, with costs, and the proceeding remitted to the Surrogate's Court of New York county for assessment as the estate of a non-resident.

CLARKE, P. J., DOWLING, SMITH and SHEARN, JJ., concurred.

Order reversed, with costs, and proceedings remitted to the Surrogate's Court for further action in accordance with opinion.