Matter of the Estate of LENA McMULLEN, Deceased.

(Surrogate's Court, New York County, February, 1921.)

Transfer tax — transfer of stock of foreign corporation owning real estate within the state of New York, the stock of which is owned by a non-resident decedent, is taxable — constitutional law — Tax Law, § 220 (2).

The provision of section 220 (2) of the Tax Law fixing for the purposes of a transfer tax the interest of a non-resident decedent in shares of stock in a foreign corporation owning real estate in the state of New York, as such proportion of the value of decedent's stock as said real estate bears to the value of the entire property of the corporation, wherever situated, is a valid exercise of the taxing power and is constitutional.

Even if at the time of decedent's death the certificate was not in this state, the transfer of his interest as stockholder in the real property here would be taxable.

The language of said section 220 (2) is not confined to corporations exclusively engaged in holding real estate but applies to all foreign corporations owning real estate in the state of New York.

APPEAL from an order assessing transfer tax.

Surrogate's Court, New York County, February, 1921.  [Vol. 114.

White & Case (Joseph F. McCloy and Thomas A. S. Beattie, of counsel), for appellant.

Lafayette B. Gleason (Schuyler C. Carlton, of counsel), for State Comptroller.

FOLEY, S.  On this appeal the executor contends that section 220, subdivision 2, of the Tax Law is unconstitutional and void in so far as it taxes the transfer of shares of stock owned by a non-resident in a foreign corporation owning real estate within the state of New York.  The decedent died May 20, 1919. The appraiser reports that an interest in 500 shares of the Atlantic, Gulf and Pacific Company, a West Virginia corporation, is taxable.  That company is engaged in dredging and owns real estate in New York city valued at $600,000, and total assets of approximately $2,500,000.  Its principal place of business and stock transfer office are located in New York. The taxable interest is fixed by the statute as such proportion of the value of decedent's stock as the value of the real estate owned in New York bears to the value of the entire property of the company wherever situated.  The executor contends:

*First.*  That the shares of stock are not within the taxing jurisdiction of the state of New York, and that the legal situs of the stock is either in the state of incorporation (West Virginia), or in the residence of the decedent, in this case Connecticut.  *Matter of Bronson,* 150 N. Y. 1; *Matter of James,* 144 id. 6; *Matter of Enston,* 113 id. 174.

*Second.*  That if the act is constitutional, it applies only to stock in corporations *exclusively* engaged in the ownership of real estate and therefore it is not applicable to the stock in this estate.

I am of the opinion that the statute is constitutional

and that the transfer was taxable. "As to residents, the transfer tax is on the succession, and is imposed on the right of succession; but as to non-residents it is a tax on the transfer of property within the jurisdiction of the court." *Matter of Bishop,* 82 App. Div. 112, 115. The stock certificate was actually located in this state at the time of the death of this testatrix and therefore was property taxable within our jurisdiction. *Matter of Romaine,* 127 N. Y. 80; *People ex rel. Wynn* v. *Grifenhagen,* 167 App. Div. 572; *People ex rel. Hatch* v. *Reardon,* 184 N. Y. 431; *Matter of Barbour,* 185 App. Div. 445, 454; *Matter of Whiting,* 150 N. Y. 27–30; *Simpson* v. *Jersey City Contracting Co.,* 165 id. 193. The legislature might have taxed the full value of the stock, but it has levied a tax only upon a partial interest. The Court of Appeals has sustained the constitutionality of the stock transfer tax (Tax Law, § 270), and all the reasons supporting that statute apply here. *People ex rel. Hatch* v. *Reardon,* 184 N. Y. 431, 449; affd., 204 U. S. 152.

But even if the certificate was not in this state at the time of death, the transfer of the stockholder's interest in the corporate real property located here would be taxable. A review of the history of the statute is convincing. During the decade previous to its enactment in 1915, the formation of corporations (both domestic and foreign) to take and hold real estate had enormously increased. Our legislative and judicial policy, from the first enactment of the Transfer Tax Law up to 1915, has been to exempt a non-resident's stock in foreign corporations. This was so even if the certificates were found in this state at the time of death. *Matter of James,* 144 N. Y. 6. The policy, however, was changed to correct the abuses brought about by the increased corporate ownership of realty. A non-resident could avoid the

tax by the conveyance of his real estate to a foreign corporation. *Matter of Richards*, 182 App. Div. 572, 575. To prevent this evasion, the amendment to subdivision 2 of section 220 was made by chapter 664 of the Laws of 1915. It must be remembered, however, that this subdivision does not apply to all foreign corporations, but only to those owning realty in this state. The legislature has levied certain taxes as a condition for doing business in the state. It has provided for a license tax which is paid on the basis of the capital stock employed in this state (Tax Law, § 181); and a franchise tax which is measured by the gross assets employed here (Tax Law, § 182). This section also applies to corporations engaged in buying, selling and holding real estate. The income tax is now assessed upon foreign corporations upon their net incomes derived from assets in this state. Tax Law, art. 9-a. The validity of these taxes has been sustained, in each instance, by the Court of Appeals. *People* v. *Home Ins. Co.*, 92 N. Y. 328; *People ex rel. Wall & Hanover St. Realty Co.* v. *Miller*, 181 id. 328; *People ex rel. Alpha P. C. Co.* v. *Knapp*, 230 id. 48. If such taxes based upon property in this state were valid deductions before the payment of dividends to the stockholder, the transfer of his '' interest,'' represented by this property within the state, is likewise clearly taxable at his death. The legislature has expressly imposed in subdivision 2 of section 220 a tax upon the transfer of '' shares of stock, bonds, notes, or other evidences of *interest in any corporation*.'' The definition of a stockholder's interest in the corporation is set forth in *Matter of Bronson*, 150 N. Y. 1, 8, as follows: '' The corporation has the legal title to all the properties acquired, * * * but it holds them for the pecuniary benefit of those persons who hold the capital stock. * * * Each share represents

a distinct interest in the whole of the corporate property.'' *Cass* v. *Realty Securities Co.*, 148 App. Div. 96, 100; *U. S. Radiator Co.* v. *State of New York*, 208 N. Y. 144, 148; *Hatch* v. *Reardon*, 204 U. S. 152, 162. Or as stated by Nelson, J., in *Van Allen* v. *Assessors*, 3 Wall. (U. S.) 573: '' This is a distinct independent interest or property, held by the shareholder like any other property that may belong to him.'' In *Matter of Whiting*, 150 N. Y. 27, 30, it was held: '' The law clearly distinguishes ' written instruments themselves ' from ' the rights or interests to which they relate' *   *   * and makes either taxable. *   *   * When the design of the legislature is to tax the transfer of everything that it has power to tax, there is no inconsistency in taxing in one form if another is not available.'' Our courts have recognized the distinction between the interest of the stockholder in the whole corporation, and his interest in part of specific property located in this state. *Matter of Cooley*, 186 N. Y. 220; *Matter of Thayer*, 193 id. 430. New York realty owned by non-residents is unquestionably the subject of a transfer tax. *Matter of Barbour*, 185 App. Div. 445, 454; *Matter of Bishop*, 82 id. 112. There is no essential difference between a transfer tax upon the *individual* ownership of realty, and a transfer tax upon the individual share of the stockholder in the corporate realty. *Matter of Bronson*, 150 N. Y. 8. The ultimate jurisdiction rests upon the *situs* of the corporate real property in this state. The statute clearly and justly places upon the same plane, for transfer tax purposes, the ownership of realty either by our own residents— individual and corporate — or by non-residents and foreign corporations. The sweeping powers of the legislature in assessing transfers of property are clearly defined by Judge Crane in *Matter of Watson*,

Surrogate's Court, New York County, February, 1921.   [Vol. 114.

226 N. Y. 384; affirmed by United States Supreme Court (*Watson* v. *State Comptroller*, 254 U. S. 122), which recently sustained the constitutionality of a transfer tax under section 221b, Tax Law. He states: " The taxing power both direct and through an inheritance tax, is very broad, and submits to few restrictions. Such laws need not be submitted to courts for their approval and can only meet with disapproval when some fundamental principle has been violated. * * * Every presumption is in favor of the constitutionality of an act of the legislature and if the Constitution and the act can be reasonably construed so as to enable the latter to stand, it is the duty of the courts to give them that construction. (*People ex rel. Met. St. Ry. Co.* v. *Tax Commissioners*, 174 N. Y. 434, 437.) "

The legislature in explicit language has declared that the transfer of stock in these corporations shall be taxed, and the statute is clearly a valid exercise of the taxing power.

Upon the executor's second contention, I hold that the language of subdivision 2, section 220, is not confined to corporations *exclusively* engaged in holding real estate, but must be extended to all foreign corporations owning real estate in New York. If the legislature desired to so limit the scope of the subdivision it had the necessary language, in another section of the Tax Law (§ 210) where the language used is " corporations wholly engaged in the purchase, sale and holding of real estate for themselves." No such restrictive language was used in section 220, subdivision 2. Likewise, if real estate corporations only were intended to be taxed, it would have been futile for the legislature to have made the exceptions to the general class of foreign corporations recited in the subdivision, viz., a moneyed corporation, railroad or transportation, or a public service or manufactur-

ing corporation.  The statute must be held, therefore, to apply to a foreign corporation like the Atlantic, Gulf and Pacific Company.  The appeal of the executor is denied.

Order reversed.