In the Matter of the Transfer Tax upon the Estate of CHARLES RAMSDILL, Deceased.

THE COMPTROLLER OF THE STATE OF NEW YORK, Appellant; HENRY A. BASCOM, as Administrator, Respondent.

TRANSFER TAX — FOREIGN INTESTATE — ADMINISTRATOR CANNOT SO APPLY ASSETS WITHIN STATE AS TO AVOID TRANSFER TAX. Where a non-resident of this state dies intestate leaving assets both in the place of his domicile and in this state and his next of kin consists of a brother and certain nephews and nieces, his administrator cannot, by electing to apply all of the portion of the estate within our jurisdiction to the payment of the brother's distributive share, avoid the payment of a transfer tax upon that part thereof to which the nephews and nieces would have been entitled. If a specific legatee of a foreign testator can obtain satisfaction of his legacy in a foreign jurisdiction the executor cannot be compelled to pay it out of the assets within our jurisdiction, but in a case of intestacy, where the distributee takes an undivided interest in the whole estate and he can only get his share of the assets within this state, under our laws and through our courts, the administrator cannot so apply that portion of the estate as to avoid the payment of a tax upon a transfer that is taxable under the statute.

*Matter of Ramsdill,* 119 App. Div. 890, reversed.

(Argued January 7, 1908; decided January 21, 1908.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered May 24, 1907, which affirmed an order of the New York County Surrogate's Court exempting the decedent's estate from a transfer tax and vacating a *pro forma* order previously made fixing a tax upon such estate.

The facts, so far as material, are stated in the opinion.

*William J. Roche* and *A. Page Smith* for appellant. A foreign administrator or executor has no right to so manipulate and distribute the assets of an estate that the effect is to defeat or impair the provisions of our Tax Law relating to transfers. (*Matter of Daly,* 100 App. Div. 373; 182 N. Y. 542; *Matter of McEwan,* 51 Misc. Rep. 455; *Magoun* v. *I. T. & S. Bank,* 170 U. S. 283; *Matter of Westurn,* 152

N. Y. 93; *Matter of Borup*, 28 Misc. Rep. 474; *Matter of Seaman*, 147 N. Y. 64; *Matter of Pell*, 171 N. Y. 48; *Blood v. Kane*, 130 N. Y. 514; *Petersen v. Chemical Bank*, 32 N. Y. 21; *Matter of Davis*, 149 N. Y. 539.) If, in spite of the change in the statute law since the decision of the *James* case, that case is still to be an authority in favor of the power of election upon the part of executors so that they can appropriate assets in such wise as to evade the Tax Law, then such power does not exist upon the part of administrators. (*Matter of Wolfe*, 89 App. Div. 349; 179 N. Y. 599; *Matter of Cook*, 187 N. Y. 253.)

*Edgar N. Dollin* and *Joseph F. McCloy* for respondent. An executor of a non-resident estate has the right, and it is his duty to so marshal and distribute the assets as will best conserve the interests of the estate and make the beneficiaries thereof liable to the least tax. It is as well the duty of an administrator to conserve the interests of the estate and protect its beneficiaries, and it follows that the same principle applies equally to him. (*Matter of James*, 144 N. Y. 6.)

WERNER, J.   On the 19th day of December, 1903, Charles Ramsdill died intestate, a resident of Malden, Massachusetts, and leaving him surviving a brother and certain nieces and nephews.   His personal estate, amounting to about $72,000, was all outside of this state, except some shares of stock in two corporations.   In the course of administration in this state application was made to the surrogate of New York county for the usual appraisal under the Transfer Tax Act. That proceeding resulted in a report to the surrogate showing that the decedent's total personal estate amounted to $72,642, of which only $6,460 was within this state, and that the total charges against the estate for funeral expenses, debts and cost of administration, were $12,041.66.   According to this appraisal the assets within this state amounted to nine per cent of the decedent's total personal estate, and the appraiser, therefore, deducted therefrom nine per cent of the debts and

expenses referred to, which amounted to $1,084. Computed upon this basis the decedent's net assets within this state were valued at $5,376, upon which the share of the intestate's brother was reported as exempt from tax, and the shares of the nephews and nieces were reported as taxable at the rate of five per cent. The report of the appraiser was confirmed by the surrogate and an order made fixing the tax. Subsequently the administrator applied to the surrogate to vacate his former order fixing the tax. In support of that application the administrator averred that he had elected to appropriate all the assets situate within this state, and the proceeds thereof, in payment of the distributive share of the intestate's brother. The application was granted by the surrogate, and from his order thus made an appeal was taken to the Appellate Division, which resulted in an unanimous affirmance of the surrogate's decision.

Upon this brief statement of the facts it is at once apparent that the only question at issue is, whether the administrator of a foreign intestate can so apply that portion of the estate which is found within our jurisdiction as to avoid the payment of a tax upon a transfer that is taxable under the statute. The administrator in the case at bar claims the right to do so under the authority of *Matter of James* (144 N. Y. 6), and this claim is challenged by the state comptroller.

In *Matter of James* (*supra*) the decedent was a resident of England, although he died in Africa. He left a will in which he disposed of a large estate, the greater portion of which was within this state. The will provided for specific legacies to various collateral relatives and foreign charitable institutions, subject to the payment of which the residue of the estate was given to executors in trust for the decedent's two brothers. The legatees, with the exception of the two brothers who lived in this country, were residents of England. The portion of the estate located in Great Britain was more than sufficient to pay the specific legacies, and the executors appropriated that portion of the estate to the payment of the legacies, and decided to place in the residuary fund that portion of the

estate which was within our jurisdiction. Under the statute
as it then stood, legacies to brothers were exempt from taxa-
tion. (L. 1887, ch. 713.) It may be suggested in passing,
that the specific legacies in that case had been subjected to a
succession tax in England, so that if they had been taxed here
there would have been double taxation; but the controlling
fact was that the property appropriated to the payment of the
specific legacies was in Great Britain and never came within
our jurisdiction. The persons entitled to the legacies could
have compelled their payment out of the English fund with-
out resort to our courts, and they were at no time dependent
upon our laws for their collection.

In the case at bar the situation is radically different. Upon
the intestate's death his estate passed *eo instanti* to the per-
sons who, by virtue of the intestate law, were entitled thereto.
Our statute (L. 1896, ch. 908, § 220) imposes a tax upon trans-
fers by will or by virtue of the laws governing intestacy which,
in the case of a non-resident decedent, is based upon that por-
tion of his estate found within our jurisdiction. This is not
a tax upon the specific property which passes, but upon the
devolution in cases of intestacy and upon the right of succes-
sion under wills. (*Matter of Swift*, 137 N. Y. 77; *Matter
of Hoffman*, 143 id. 327.) "The devolution of the property
and the right of the state have their origin at the same moment
of time. The ascertainment of the value of the taxable inter-
est and the fixing of the tax necessarily takes place subsequent
to the death. But the guide is the value at the time of the
death, when the interests were acquired." (*Matter of
Westurn*, 152 N. Y. 93, 102.) The right of the state to the
tax is, therefore, coincident with the devolution of title or
interest; and the right of the state to exact a tax, as well as the
obligation of the transferee to pay it, depend not upon a formal,
complete and immediate change of title or possession, but
upon the instant right to a beneficial share or interest subject
only to the due administration of the estate. This is the rule
recently enunciated by the Supreme Judicial Court of Massa-
chusetts, under a similar statute, where that court said: "The

rights of all parties, including the right of the common-wealth to its tax, vest at the death of the testator.    It is true that the interest of a legatee is subject to an accounting; but it is an interest in the existing fund and it is analogous to that of a *cestui que trust*." (*Kingsbury* v. *Chapin*, 82 N. E. Rep. 700.)   The Massachusetts court went so far as to hold that in no case can an executor so marshal the assets of an estate as to deprive the state of its tax; but the facts which clearly differentiate the case at bar from *Matter of James* (*supra*) incline us to a confirmation of the views expressed in the latter case, which we emphasize by repeating them.    When a specific foreign legatee of a foreign testator can obtain satisfaction of his legacy in a foreign jurisdiction, the executor cannot be compelled to pay such a legacy out of the assets within our jurisdiction.    This is the necessary result of the practical and obvious distinction between testacy and intestacy as applied to this subject of taxation.    If a specific legatee needs not the intervention of our laws or courts to obtain what comes to him under a foreign will through foreign assets, in a foreign jurisdiction, our laws cannot coerce an executor into paying his legacy out of funds within our jurisdiction for the sole purpose of exacting a tax. But in a case of intestacy the rule is essentially different, because the distributee takes an undivided interest in the whole estate; and if part of it happens to be within our jurisdiction, he can only get his share of what is here under our laws and through our courts.    This is the theory upon which the nephews and nieces of the intestate in the case at bar are clearly taxable under our statute.

The order of the Appellate Division and the final order of the surrogate should be reversed, and the surrogate's *pro-forma* order upon the report of an appraiser should be affirmed, with costs to the comptroller in all courts.

CULLEN, Ch. J., GRAY, VANN, WILLARD BARTLETT, HISCOCK and CHASE, JJ., concur.

Ordered accordingly.