No. 23,824.

THE CENTRAL UNION TRUST COMPANY et al., *Appellees*, v. THE STATE OF KANSAS et al (THE INHERITANCE TAX COMMISSION, and SAMUEL T. HOWE et al., as Members of the Inheritance Tax Commission, *Appellants*.)

SYLLABUS BY THE COURT.

1. INHERITANCE TAX—*Charge Upon Right to Inherit Property.* The so-called inheritance tax (Gen. Stat. 1915, ch. 115, art. 7), is a charge upon the right to receive property passing by descent or will.

2. SAME—*How Laid on Personal Property Belonging to Estate of a Nonresident Testator.* A New York testator provided in his will that all the personal property with certain exceptions should be sold by the executors and out of the proceeds they should pay certain cash legacies. The total

value of the estate was over twenty-five million dollars. The total indebtedness was over three million dollars. No administration was taken out in Kansas. The New York surrogate court allowed debts aggregating over three million dollars. There were no debts or creditors in Kansas. The special bequests amounted to about six million dollars, leaving about fifteen million dollars in the residuary estate. The testator left $351,000 of stock in the Santa Fe Railway Company—specific bequests thereof having been made. *Held,* that the inheritance tax should be laid on such Kansas property after deducting a proportionate amount of the debts of the estate.

Appeal from Shawnee district court, division No. 2; GEORGE H. WHITCOMB, judge. Opinion filed December 10, 1921. Affirmed.

*Richard J. Hopkins,* attorney-general, *J. K. Rankin,* and *John G. Egan,* assistant attorneys-general, for the appellants.

*R. W. Blair,* and *T. M. Lillard,* both of Topeka, for the appellees.

The opinion of the court was delivered by

WEST, J.: Augustus D. Juilliard died about April 25, 1919, a resident and citizen of Orange county, New York, leaving a will which was probated in the surrogate court of that county in September, 1919. The plaintiffs are the executors of the will. The estate had among its assets three thousand shares of preferred stock and one thousand of common stock of the Santa Fe Railway, which at the death of the testator were worth $351,000. The will specifically devised the home and personal effects, and ordered all the rest of the estate to be sold, the bequests to be paid, and the balance invested as the executors should see fit. The inheritance tax commission of this state, although allowing the deduction of the proportionate amount of the federal estate tax, ruled that specific bequests, debts and expenses of administration were payable first out of the domiciliary estate, leaving the Kansas property properly belonging to the nonresident decedent to fall into the residuary estate at full value unless there were debts or other claims in Kansas which would go to reduce the value of the property. The commission found that there were no debts or claims against the estate in Kansas or any creditors residing here and that the funds in the hands of the New York executors were more than sufficient to pay all the debts, expenses of administration, and specific bequests, and, therefore, the tax was required on the basis of the whole $351,000.

The plaintiffs insist that there should first be deducted from the gross value of the Kansas assets the proportionate amount of the total indebtedness of the estate and that only the net value of the Kansas assets so ascertained should be used as a basis, which would in this case lower the inheritance tax payable in Kansas approxi-

mately $10,000 below the sum required by the commission. The plaintiffs appealed from the order of the commission to the district court of Shawnee county where in the second division the ruling of the commission was reversed, and from that ruling this appeal is taken.

Kansas passed the first inheritance tax law in 1909, chapter 248 of the Laws of 1909, which was repealed by chapter 330 of the Laws of 1913. The legislature of 1915 enacted chapter 357 which has since been in force. By chapter 319 of the Laws of 1917, the state tax commission was made the inheritance tax commission and given certain powers therein set forth. By chapter 305 of the Laws of 1919, section 11203, General Statutes of 1915 (being section 1 of the act of 1915), was amended in respect to the classification only. The language of the act of 1915 seems to provide unmistakably for the assessment of a tax in the ordinary acceptance of the term. But in this respect the act follows similar legislation of other states and the courts have held practically without exception that the sum required to be paid is not a tax in the ordinary sense of the word, but a mere exaction upon the right to receive property by inheritance or devise. In 1894, the supreme judicial court of Maine in *State v. Hamlin*, 86 Maine, 495, in considering a similar statute said:

"The tax provided for in the statute under consideration is clearly an excise tax. . . . It is true that the act contains some language indicating a tax upon property; but it should be construed according to its essential principle, object and effect. Substance, and not form or phrase, is the important thing. All exactions of money by the government are taxes; but they are not all levied by assessment upon values. . . . The tax under this statute, is once for all, an excise or duty upon the right or privilege of taking property, by will or descent, under the law of the State." (pp. 503, 504.)

The federal supreme court in *Knowlton v. Moore*, 178 U. S. 41, in an exhaustive opinion by Chief Justice White, went over the history and philosophy of inheritance taxes and after holding that the right to take property by devise is a creature of law and not a natural right, and, hence, one which may be taxed, said:

"Concluding, then, that the tax under consideration is not direct within the meaning of the Constitution, but, on the contrary, is a duty or excise, we are brought to consider the question of uniformity." (p. 83.)

The supreme court of South Dakota in *In re McKennan's Estate*, 25 S. D. 369, in 1910, went over the ground very thoroughly and reached a similar conclusion. This court in *The State, ex rel., v.*

*Cline,* 91 Kan. 416, 137 Pac. 932, in an exhaustive opinion by the late Justice Benson, reviewed the question legally and historically, holding that—

"An inheritance tax is in the nature of an excise upon the transfer, rather than a property tax, and the constitutional rule requiring uniformity in the rate of assessment of property, prevailing in this and other states does not apply." (p. 420.)

The foregoing cases furnish a thesaurus of historical and legal knowledge upon the subject of inheritance taxes and settle beyond question the proposition that they are deemed a mere charge or excise upon the passing of property by inheritance or devise. (See, also, *The State v. Mollier,* 96 Kan. 514, 152 Pac. 771, holding that the tax is upon the right to take the property.)

Counsel for the executors say that in determining the net value of the Kansas assets a proportionate amount of the indebtedness of the estate should have been deducted. They quote the provision of section 11206, General Statutes of 1915, that the tax upon the several shares of an estate shall be determined upon the actual value of the property at the time of the death of the decedent, and contend that this shows that it is the actual value of the property passing to the beneficiary which has to be considered, and which can be determined only after the deduction of the indebtedness. They suggest that the legislature expressly provided for the deduction of the indebtedness by section 2 of chapter 319 of the Laws of 1917, which says that in determining the amount of any tax the commission shall not be required to consider any payments on account of debts or expenses of administration which have not been allowed by the probate court having jurisdiction of the estate. They call attention to the fact that the New York surrogate court allowed indebtedness against the estate amounting to over three million dollars and say:

"We know of no reason why the Kansas assets of this estate shall not bear a proportionate amount of the indebtedness."

They also urge the inconsistency of deducting a percentage of the federal tax and not deducting anything on account of indebtedness, and insist that the two deductions stand upon the same footing. The points thus presented will be covered by what is hereinafter said, although they may not be further mentioned specifically.

*Kingsbury v. Chapin,* 196 Mass. 533, is cited in support of the contention that the debts and expenses are chargeable upon general

assets, and it is said that *Wieting v. Morrow,* 151 Iowa, 590, follows the same rule. In the former case the executors brought a suit for instructions as to the amount they should pay for collateral inheritance tax under the Massachusetts law then in force. A part of the property left was stock in railroad companies, incorporated in that state, and owning and operating railroads in that and into other states in which the companies were also incorporated. This stock was held to be "property within the jurisdiction of the Commonwealth" under the Massachusetts statute. The court said:

"It is true that the interest of a legatee is subject to an accounting; but it is an interest in the existing fund, and it is analogous to that of a *cestui que trust.* The executors cannot, by independent action in attempting to marshal assets according to their personal wishes, enlarge or diminish the rights of legatees, or of the Commonwealth. The property in Massachusetts is subject to the jurisdiction of our courts, and the executors must use and appropriate it according to law. . . . The debts, the legacies in Massachusetts exempt from taxation and the expenses of administration are chargeable upon the general assets, as well those in New Hampshire as those in Massachusetts, and only a proportional part of the property in Massachusetts should be used in paying them. The balance is subject to the payment of a tax under the statute." (p. 538.)

In the Iowa case it was held that when a nonresident holder of property both in Iowa and in a foreign state devised an undivided one-third of all his property to his widow, and also a life estate in all the remainder after the payment of specific legacies, the property in that state should be charged with the debts of the testator and the widow's one-third *pro rata* with the other property, and the inheritance tax should be assessed only upon the balance of the assets in this state after deducting the present value of the widow's life estate in the residue. The estate was worth $167,371, and included property in Iowa worth $43,762. The remainder of the property was located in New York. The estate consisted of both personal and real property in both states and the indebtedness of the estate was $16,300. In the opinion it was said:

"The proportion of the debt which should be charged against the Iowa property under our statute is agreed to be $4,262, leaving the net value of Iowa property at $39,500." (p. 592.)

It was contended that no part of the property located in Iowa was exempt from the tax and that the amount should be computed upon the whole $39,500. The statute there quoted provided in substance that the tax should be assessed upon the market value of the prop-

erty then remaining after the payment of such debts and expenses chargeable under the laws of the state, and further, that whenever any property within Iowa belonged to a foreign estate which passed in part exempt from collateral inheritance tax and in part subject to such collateral inheritance tax and it was within the authority of the one administering the estate to dispose of the property not specifically devised, in payment of debts, legacies, or distributive shares, then the property in Iowa became subject to the imposition of the tax, under another section of the code providing for a deduction of the proportionate share of the indebtedness. The court construed this legislation in accordance with the holding already indicated, and said:

"But the widow only asks that the assets located in Iowa be applied *pro rata* to every provision of the will. This is equitable, to say the least. We find nothing in the statute to forbid it. On the other hand, the contention of appellant amounts to an arbitrary marshaling of assets which might result either in depriving the widow of the right to receive any benefit from that part of her husband's estate situated in Iowa or else in depriving her of the very exemption from the tax which the statute has expressly provided." **(p. 595.)**

It is said that the Santa Fe stock constituted part of the New York as well as the Kansas assets. That may be true in a certain sense, but for the purpose of this case it must be regarded as Kansas assets. It is suggested that as this stock is a part of the New York assets, and is taxed by the state of New York, the Kansas commission is exacting a double tax. However unfair the result may be it is for the other state, and not this to right the supposed wrong. The stock is Kansas property owned by the New York decedent and in exacting the inheritance tax our commission is but following the settled law.

It is next insisted that the distributees take each a proportionate interest in the entire estate, "and hence the Kansas assets passed *pro rata* to each and every legatee under the will and not solely to the residuary legatee." Various sections of the statute are referred to as supporting this contention. From these it is argued that when part of an estate is within this state and part without, it must all be treated as a whole, and the proportionate percentage rule must be applied in computing exemptions.

*Matter of James*, 144 N. Y. 6, is urged as a strong support of the views contended for by the executors. There the testator died in Great Britain possessed of property largely in excess of the amount

given by him in legacies, and of property in America. Some part of the legacies had been paid from the English estate, and the executors proposed to appropriate that part to their payment, so that the American estate should constitute the residuary estate disposed of by the will in favor of the testator's brothers. It was held that this could be done and that the legacies were not taxable under the New York inheritance tax act. That act provided that all property of the estate at the time of his death, such property being within the state, should be subject to tax of five dollars on every hundred dollars of clear market value. It was said in the opinion that—

"The right of the state to impose the tax is based upon its dominion over what property is situated within its territory. If the property consisted in personalty, its legal situs, although it, in fact, existed elsewhere than in the state, would follow the domicile of its owner and thus, if he were a resident of the state, become subject to taxation there. . . . In the present case, the property, which the testator died possessed of in Great Britain, is largely in excess of the amount given by him in legacies. Some portion of them has already been paid from the English estate and the executor has declared his determination of appropriating that part of the testator's property to their payment; so that the American estate shall constitute the residuary estate, disposed of by the will in favor of the testator's brothers. This he may rightly do and thus save the estate from the payment of the succession tax imposed by our laws. . . . If the executor determines to pay the legacies from the English estate, the American estate is, thereby, freed from the burden of the special tax; the imposition of which depends upon the fact of a succession by the legatee to some property which is within the state. If the American estate is appropriated to persons, who are within the excepted degrees of relationship to the testator, the right to claim the tax from the executor is gone. It does not lie with the officers of the state to say, in such a case, which part of the testator's property shall be appropriated to the payment of the legacies. The law is not arbitrary in its application. It is simply absolute in its requirements, when the precise case arises, which it was framed to meet; and where, as here, the case is not presented of an appropriation of any part of the American estate in payment of the legacies to the foreign legatees, this special tax law cannot and should not apply." (p. 10.)

In *Tilford v. Dickinson*, 79 N. J. Law 302, relied on by counsel for the executors, it appeared that a testator died domiciled in the state of New York, leaving personal property there and in New Jersey, and leaving bequests to persons which were exempt, and bequests to persons taxable under the New Jersey statute. It was held that the executors could not relieve the property in New Jersey from taxation by applying it to the payment of exempt legacies, and by

paying the taxable legacies out of the New York property. The statute provided among other things that all property passing to certain named beneficiaries should be exempt from payment. of taxes, but no other exemptions should be allowed. It was insisted that the property in, New Jersey which was by the New York executor turned into the residuum of the estate, was exempt from taxation, because it passed to a brother and sister. The James case (144 N. Y. 6) was urged, but the court deemed the New Jersey statute so different from that of New York that the decision could not be held applicable. Aside from this, it was said:

"Speaking of intestate estates, I am inclined to think that apart from the statute, the logical rule to be adopted where property is situated as in this class, is the rule provided for by our statute. The theory upon which it rests is that each distributee has an undivided interest in all the assets of an estate, and that no particular portion of such assets passes to any particular distributee. Therefore, when it is ascertained what portion of the whole estate goes to all of the collateral distributees as a class, it will be presumed that such proportion of the New Jersey property goes to such class of collaterals as the property in New Jersey bears to the property in New York—it being assumed that equal proportions of the property in both states will be devoted to the payment of collateral distributees." (p. 307.)

Again:

"When the designated beneficiaries are, as in this case, general and not specific legatees, no legatee takes any specific assets of the testator's estate. He does take an interest in the entire estate, to be ascertained upon administration after the application of the estate to the payment of debts, by the distribution of the remaining estate according to the terms of the will. The bequest to testator's sister for life, and to a brother for life, and of the residuum to another brother, did not pass to either any particular assets, and so did not pass *in specie* the New Jersey property. . . . No particular portion of the estate was by the testator devoted to any particular legatee. The interest which passed on the death of the testator was only to have some property delivered, or money paid, in the course of administration." (p. 309.)

It appears from plaintiffs' brief that this decision was reversed by the court of errors and appeals, but it is said that the soundness of its reasoning has been since recognized in *Lawyers' T. & T. Co. v. Comptroller of Treasury*, 85 N. J. Eq. 481. The James case was modified by *Matter of Ramsdill*, 190 N. Y. 492.

Attention is called to a portion of section 12 of the act (Gen. Stat. 1915, § 11214) to the effect that when the estate of a nonresident decedent has among its assets property within the jurisdiction of this state, but which is physically without the state, and no letters

Trust Co. v. The State.

testamentary or of administration have been previously taken out here "the tax upon the distributive shares of such property shall be determined by the commission," and "any expense incurred in the probate court under the provisions of this section shall be borne *pro rata* by the distributees according to the value of their respective shares." It is argued that if the legislature had intended such property to pass to the residuary legatee it would have said so instead of directing the tax commission to make the assessment upon the distributive shares of such property.

This seems to have reference mainly to applications made to the commission by any shareholder, or by any person interested or any administrator for determination as to the taxable value, and amount of tax chargeable against any distributive share of any estate, or by the commission on its own motion which may in case of a non-resident decedent require the tax to be paid direct to the state treasurer instead of certifying it to the probate court and to the county treasurer, the latter officer being the one under ordinary circumstances to whom payments should be made under section 11204.

The rule of the commission that specific bequests and the like are payable first out of the domiciliary estate, leaving the Kansas property to fall into the residuary estate at the full value in the absence of Kansas debts or claims, is said to be unjust in view of the fact that the tax is fixed upon a sliding scale, the rate increasing with each increase in the value of the share of the distributee, and attention is called to the fact that by deeming the Kansas assets a part of the residuary estate the tax would be five per cent on the first $25,000; seven and one-half per cent upon the next $25,000; ten per cent on the next $50,000, and twelve and one-half per cent on the remainder, while if the Kansas assets were proportioned *pro rata* among all the legatees according to the value of their respective legacies, a large number of legatees would participate in the Kansas assets, and the share of each would then be comparatively small. *Knowlton v. Moore*, 178 U. S. 41, is relied upon as an authority against this sort of exaction. It was there said:

"The tax is on each separate legacy or distributive share, but the rate is measured by the whole estate. In other words, the construction proceeds upon the assumption that Congress intended to tax the separate legacies, not by their own value, but by that of a wholly distinct and separate thing." (p. 76.)

11—110 Kan.

In that case the plaintiffs were the executors of the will of Knowlton who died in Brooklyn, New York, and the defendant was the revenue collector of the first district of that state. Under the act of congress of June 13, 1898, the collector demanded a return showing the amount of the personal estate of the deceased's estate and the legatees and distributees thereof. The executors asserted that the act was unconstitutional and made return under protest which showed that the personal estate amounted to over two and a half million dollars, and that there were several legacies ranging from $10,000 to $1,500,000. The collector levied a tax upon the legacies and distributive shares, but for the purpose of fixing the rate of tax considered the whole of the personal estate of the deceased as fixing the rate for each, and not the amount coming to each individual legatee under the will. This decision greatly increased the aggregate amount for taxation. It was held that the statute clearly imposed the duty upon the particular legacies or distributive shares, and not on the whole personal estate. The statute provided that any person having in charge or trust as administrators, etc., any legacies or distributive shares arising from personal property "where the whole amount of such personal property as aforesaid shall exceed the sum of $10,000 . . . shall be, and hereby are, made subject to a duty or tax, to be paid to the United States as follows, that is to say: Where the whole amount of said personal property shall exceed in value $10,000, and shall not exceed in value the sum of $25,000, the tax shall be . . ." (pp. 61, 62.) It was said that the language of the statute forced the conclusion that what was taxed was legacies and distributive shares of personal property.

"Thus it cannot be doubted that, in assessing the tax, the position of each separate legatee, or distributee must be taken into view in order to ascertain the primary rate which the statute establishes." (p. 66.)

After full consideration of the statute, it was concluded that—

"As the 'whole amount of such personal property as aforesaid' relates to the sum of each legacy or distributive share considered separately, it follows that all legacies not exceeding ten thousand dollars are not taxed, and that those above that amount are taxed primarily by the degree of relationship or absence thereof, specified in the five classifications contained in the statute, and that the rate of tax is progressively increased by the amount of each separate legacy or distributive share. This being the correct interpretation of the statute, it follows that the court below erroneously maintained a contrary construction, and, therefore, the tax assessed and collected was for a larger amount than the sum actually due by law." (p. 78.)

Finally, counsel say, a general legacy is one payable out of the general assets, and the true rule is the one adopted in the Kingsbury, Wieting, Tilford and Knowlton cases—

"That each several legatee who does not take specifically a certain, particular piece of property but who takes merely a cash legacy, has a *pro rata* or proportionate interest in all of the property of the estate."

The commission on the other hand contends that, in figuring the tax, only the property in Kansas can be considered; that the New York courts have determined that when a deceased person whose domicile is there leaves property in that state and other property in some other state all the state debts due from the estate in New York should be paid from the assets therein even though it include all the New York assets, citing *Matter of King*, 71 N. Y. App. Div. 581, affirmed in 172 N. Y. 616. *Trust Co. v. Speed*, 114 Tenn. 677, is urged in support of the commission's ruling. There a nonresident devised and bequeathed one-half of the residue of his estate to his wife, and died the owner of personal property in Tennessee, which was part of the residue, a portion of which she elected to take at a fair valuation as compared with the rest of the residue, and the executors transferred it to her in kind, in payment of her one-half interest in the residuary estate, and it was held that the property so taken was not subject to the tax. It was further held that debts owed by the testator must be deducted from the aggregate value of the estate before it could be ascertained what amount was subject to the tax, which must be "levied on the clear value of the estate so passing," but that Tennessee debts paid by the executor before the institution of tax proceedings and not shown to have been paid out of the Tennessee assets could not be deducted from such assets. The statute provided that all estates, situated within the state whether the person dying seized thereof be domiciled within or without the state, passing from any person who might die seized thereof (other than to the widow and certain others), should be subject to a tax of five dollars on "every hundred dollars of the clear value of such estate or estates so passing. . . ." The question was whether the widow who was confessedly not liable for the tax on the property passing to her, could select specific property left in the residuary estate. *Matter of James*, 144 N. Y. 6, was cited and followed. As to the right to deduct the debts due to Tennessee creditors it was said the statute provided that the tax should be levied on the net value of the estate passing. It appeared that the decedent

owed $12,539 in Tennessee. The appraiser found that there was $34,000 worth of Tennessee assets, and reported that he had deducted from this $17,000, or one-half—going to the widow. The lower court found that the $17,000 should pay a tax, and refused to allow exemption on account of Tennessee debts. The supreme court said it would infer that the individual debts were paid out of the Mississippi assets since the appraiser found the $34,000 intact for distribution.

"In addition to this, if the executor sought to deduct debts due Tennessee creditors from the shares of the estate passing to the collateral kindred, it was incumbent on it to show they were discharged with Tennessee assets. This fact does not appear in the record. We concur with the circuit judge in disallowing these debts as creditors on the stock of the Memphis Trust Company appraised for taxation at $14,000. We nonconcur with the circuit judge in his holding that the setting apart of the stock in the Bank of Commerce to the widow did not exempt said stock, or any part thereof, from liability for the collateral inheritance tax." (p. 691.)

The case of *McDougald v. Low*, 164 Cal. 107, is urged as a strong authority. There the decedent died domiciled in New York where he left a large estate which was probated there. He also left certain California shares of stock. There was no California administrator. All debts were proved in New York. There were none in California. The value of the New York property far exceeded all the debts. The estate was worth nearly two million dollars and the California assets were worth nearly three hundred thousand dollars. The lower court held that this should bear its proportion of the debts, and that the tax should be levied on the remainder only. Regarding the residue as what remained after the legacies, debts, and expenses were paid the supreme court held that—

"Where, as in this case, property having its *situs* in this state is not in fact resorted to for the payment of debts or expenses, but passes in kind to the legatee, and there are no debts due creditors in this state, and the estate in the state of the domicile is ample to pay all debts and expenses of administration, we see no reason why any deduction should be made from the actual value of the property that actually does pass in kind to the legatees." (p. 110.)

As to the claimed inconsistency of deducting the Federal estate tax, while not an essential matter here, it may be said that this rule is in line with that in a majority of the states.

"In New York it is held that the present Federal tax is not a deduction. . . . This is not in accord with the general trend of authority in other states." (Gleason & Otis, Inheritance Taxation, 2d ed., 383.)

Trust Co. v. The State.

Counsel for the commission say:

"The pleadings show the amount of the estate, the approximate amount of the debts due and the amount of the specific legacies. The debts and specific legacies will be paid only in New York, and there is sufficient property in that state to pay all such claims and legacies. As these charges against the estate are due in New York, the executors will be allowed to make the proper deductions in that state, following *In the Matter of King* supra, and having secured the benefits of such deductions in New York, no good reason can be given for prorating the Kansas property among the legatees unless the evidence affirmatively discloses that the executors would in fact do this. There is just as much reason for prorating the debts and costs of administration as there is for prorating the property in Kansas among the legatees. These deductions having been made in New York, the inheritance tax in that state would be paid on such a basis. . . . If the Kansas property was taken to pay the debts, costs of administration or the specific legacies, this fact must be affirmatively shown by the appellee. The specific legacies are a direct charge against this estate, and as stated before, if not paid before the end of one year can be collected in New York by an action in assumpsit, the same as any other debt. (*Foulk v. Foulk,* 6 N. Y. Suppl. 112.)"

In the admirable treatise by Gleason & Otis on Inheritance Taxation, second edition, 1919, it is said that the actual and theoretical situs of property subject to inheritance taxation presents some of the most perplexing questions in the entire scope of the subject.

"It is further complicated by the frequent amendment of the statutes so that one decision which apparently conflicts with another in fact construes a statute that has since been amended by the legislature." (p. 307.)

It was suggested that though the tax is on the transfer and not upon the property, the value of the property transferred is used as a yard stick.

"More serious problems arise in taxing the transfer of property of non-residents within the State. The estate might be bankrupt and yet there might be no local creditors and all the assets might be within the State. The general rule is to apportion or pro rata the assets and total debts; as well as the funeral expenses, commissions and other deductions." (p. 392.)

"In the matter of nonresidents the conflicting theories and conflicting statutes often impose oppressive double taxation, on the one hand, while on the other, large estates frequently escape the tax altogether." (p. 543.)

In regard to the King case, affirmed in 172 N. Y. 616, holding that the executor might marshal assets and thus save the estate from payment of local tax, the authors state that the New York rule no longer obtains, that it was first modified in *Matter of Ramsdill,* 190 N. Y. 492, and—

"By chapter 310, L. 1908 (subd. 3, § 220, of the present act), it was provided that all taxable nonresident property within the State not specifically

bequeathed is deemed to be transferred proportionately; and foreign executors are no longer permitted to marshal the assets so as to defeat or lessen the tax. The same result has been attained in Massachusetts through judicial construction." (p. 400, citing *Kingsbury v. Chapin,* 196 Mass. 533, and former Massachusetts decisions.)

The rule adopted by the commission that the total indebtedness against the estate of a nonresident intestate should be apportioned as between property located in Kansas and property located elsewhere, for the reason that the residue of the estate after the payment of debts, expenses of administration, etc., is the fund for distribution, seems to be in line with the theory contended for by the plaintiffs; but the rule as to nonresident testators' estate that the debts, expenses, specific bequests and general legacies should be considered as first payable from the domiciliary estate if sufficient to liquidate such matters, leaving the Kansas property to fall into the residuary estate, subject only to deductions from its value of the Kansas debts, save in case of mortgages which are taken to the full extent, is the rule about which this controversy centers. The only difference so far as this case is concerned is that the residuum must pay larger inheritance taxes when treated as an entity than when divided and subdivided into as many parts as there are beneficiaries, for it must be borne in mind that these residuary legatees are taking the willed property located in Kansas, protected by its laws and under its jurisdiction. It is quite true that ordinarily an heir to an estate or a devisee, or legatee under a will is entitled to his share after all the liabilities are met and that such net share is what passes to him by descent or by will, but according to a very old and homely proverb "circumstances alter cases," and whether this ordinary rule of passing property under ordinary circumstances should now be followed must, after all, rest on a construction of the statute and the intent and meaning to be derived therefrom, for it will be observed that all the decisions relied on by both sides amount mainly if not only to constructions of the statutes involved. Let us see what language the legislature has used, and what its meaning is. Section 1, chapter 357 of the Laws of 1915, provides that "all property" and "any interest therein . . . which shall pass . . . shall be taxed as herein provided." Then the section speaks of distributive shares of estates, respective shares, value of the shares. Section 2 provides that—

"If legacies or distributive shares are paid or delivered within the one year the taxes thereon shall be payable at the same time."

Section 4 provides:

"The tax upon the several shares of an estate, . . . shall be determined on the actual value of the property at the time of the death of the decedent; and when any property or interest therein, . . . shall pass . . . the tax upon the several shares of the estate . . . shall be due . . ." etc.

Section 5 treats of estates in expectancy and provides that certain settlements may be based "upon the residue of the total value of the estate as of the day of the death of the decedent, after the deduction therefrom of the value of the particular estates . . ." Section 12 provides for a hearing by the tax commission and that "after the value of the shares shall have been ascertained, and the tax chargeable against any of the said shares, if any, shall have been determined" the commission shall make an order, etc. Also— "in case it shall be found that no tax is chargeable against any share of the estate being passed" the commission shall issue its certificate to that effect.

"When the estate of a non-resident decedent shall have among its assets property within the jurisdiction of the state of Kansas, but which is physically without the state, and no letters testamentary or of administration shall have been taken out in this state, the tax upon the distributive shares of such property shall be determined by the commission, . . ."

Section 18:

"Whenever the tax upon any distributive share of an estate shall be paid to the county treasurer, he shall issue his receipt."

Section 27 provides:

"The words 'estate' and 'property,' as used in this act, shall be taken to mean the real, personal and mixed property or interest therein of the testator, intestate, grantor, bargainor, vendor or donor which shall pass or be transferred to legatees," etc.

These repeated expressions concerning distributive shares strongly indicate a legislative intent to exact a tax not upon the total property in this state passing to the residuary legatees, but upon their distributive shares thereof. The language quoted and much more found in the statute is consistent with this conclusion, if not such as to compel it, and we find nothing whatever to indicate an intention to treat the property as a unit and thereby require a much larger tax than if divided into its distributive shares. This also seems more in accord with the principles of fairness and the way the property of a citizen dying here would be treated, and we find no

sign of a purpose to make the burden greater in case of nonresidence.

The question has been ably presented and we have given it careful consideration and are constrained to hold that the ruling of the district court was correct.

The judgment is therefore affirmed.