ESTATE OF C. WARREN CASWELL, DECEASED, LOIS S. CASWELL, ADMINISTRATRIX, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 6049–70. Filed April 15, 1974.

*Benjamin Arnest*, for the petitioner.
*Fred L. Baker*, for the respondent.

OPINION

SIMPSON, *Judge:* The respondent determined a deficiency of $7,300.68 in the petitioner's estate tax. Due to concessions, the only issues remaining for decision are whether a deed, or retroactive renunciations, qualify as disclaimers under section 2056(d)(2) of the Internal Revenue Code of 1954,[1] relating to the marital deduction.

All of the facts have been stipulated, and those facts are so found.

The petitioner is the Estate of C. Warren Caswell, who died intestate on October 21, 1966. The administratrix of the estate was Lois S. Caswell, his wife, whose legal residence was in Rockville Centre, N.Y., at the time of filing the petition herein. The estate's Federal estate tax return was due on January 21, 1968, but was filed on May 17, 1967, with the district director of internal revenue, Brooklyn, New York.

On October 28, 1966, the Surrogate's Court for the County of Nassau, N.Y., issued letters of administration to Mrs. Caswell. Mrs. Caswell and the decedent's children, Joan E. Caswell and Warren L. Caswell, were the sole distributees of Mr. Caswell's estate. The daughter was born on May 5, 1943, and the son was born on April 12, 1946.

Mr. Caswell's estate included a private residence in Rockville Centre, in addition to stocks, bonds, savings accounts, and life insurance policies. On the Federal estate tax return, a marital deduction was claimed; in computing such deduction, the property treated as transferred to the surviving spouse consisted of the proceeds of the life insurance policies, $2,000 as a widow's benefit, and one-third of the residue of the estate.

By a deed made on June 13, 1967, Joan and Warren Caswell conveyed their interests in the Rockville Centre residence to Mrs. Caswell. The instrument was a standard form of the New York Board of Title Underwriters; no additions, deletions, or modifications were made to the material printed on the form. The printed material included the statement that the consideration Joan and Warren Caswell received in exchange for their interests was "Ten Dollars and other valuable consideration." On the upper left-hand corner of the deed,

---

[1] All statutory references are to the Internal Revenue Code of 1954, unless otherwise indicated.

the following note was made by pen: "No consid. No IRS." The deed was thereafter duly recorded with the County Clerk of Nassau County, N.Y., on July 27, 1967. At the time of the making of the deed, Warren Caswell was in the military service of the United States, stationed in Japan.

On January 12, 1968, Joan and Warren Caswell executed documents wherein they acknowledged the receipt of a certain amount of cash and securities in full satisfaction of their interests in Mr. Caswell's estate. By the same documents, they released Mrs. Caswell from any claims they might have against her as administratrix of Mr. Caswell's estate. The documents were filed with the Surrogate's Court of Nassau County on January 16, 1968.

Joan and Warren Caswell filed a petition and supplemental petition, dated May 24, 1968, and July 17, 1968, respectively, with the Surrogate's Court of Nassau County. In those petitions, they recognized that the 6-month period under New York law for renouncing an interest in an intestate estate had expired on April 28, 1967. They requested an "extension" of the time for renouncing such an interest and gave as their reasons for the delay in making the request that Warren Caswell did not reach his majority until April 12, 1967, that at that time he was a member of the military service of the United States stationed outside the United States, that not until recently was it practicable for him to consult a lawyer and arrange for the renunciation, and that Joan Caswell, his sister, did not wish to renounce her interest until she could do so in conjunction with her brother. They also stated that they had not received or accepted a distribution of all their interests in the estate of their father, but elsewhere in a memorandum accompanying the petitions, they recognized that they had executed a receipt and release form on January 12, 1968, upon the distribution of their interests in the estate to them.

In the petitions, Joan and Warren Caswell declared that they each desired to renounce a percentage of the distribution equal to the value of their interests in the residence. They stated that they wished their mother to acquire complete ownership of the residence. They referred to the deed which had been made on June 13, 1967, and they requested the court to make its order effective nunc pro tunc to May 9, 1967, a date prior to their receipt of any distribution from the estate and prior to the due date for the Federal estate tax return.

In the memorandum submitted to the Surrogate's Court in support of the petitions, it was stated that the entire value of the residence had been used for claiming a marital deduction for purposes of the Federal estate tax. It was also revealed that the respondent, in the course of auditing the return, had taken the position that the entire value of

the residence could not be used for that purpose unless Joan and Warren Caswell formally renounced their interests in the residence in accordance with New York law.

Pursuant to its decision rendered July 23, 1968, the Surrogate's Court, on July 25, 1968, ordered that the period during which Joan and Warren Caswell were required to file renunciations was extended for 3 months from the date of the order. The court also ordered that the renunciations, when filed, should be deemed filed nunc pro tunc as of May 9, 1967. In compliance with the court's order, Joan and Warren Caswell filed, on August 8, 1968, renunciations to a percentage of their respective distributive shares, which equaled the value of their interests in the Rockville Centre residence.

In his notice of deficiency, the respondent determined that the marital deduction should be reduced because the insurance proceeds did not qualify for the deduction and that the children's deed and renunciations did not constitute disclaimers under section 2056(d)(2). The respondent also disallowed certain other deductions claimed by the estate. The estate has conceded all the adjustments except for its contention that the entire value of the residence does qualify for the marital deduction.

Under the New York State law which governs the distribution of an intestate estate, Mrs. Caswell was entitled to receive $2,000 plus one-third of the residue of Mr. Caswell's estate, including one-third of the value of the Rockville Centre residence. The children were entitled to the remainder of the residue, to be shared equally between them. N.Y. Est., Powers & Trusts Law sec. 4–1.1(a)(1) (McKinney 1967). The marital deduction of the estate is limited to the property which Mrs. Caswell thus acquired by operation of the New York intestate law, unless she is also considered to have acquired from the decedent the interests of the children in the Rockville Centre residence by reason of their attempted disclaimer of such interests. If the deed or renunciations constituted valid disclaimers for Federal estate tax purposes, then the marital deduction would also include the value of such interests. Sec. 2056 (a) and (d)(2). The requirements are set forth in section 2056(d), which provides, in part:

(d) DISCLAIMERS.—

*     *     *     *     *     *     *

(2) BY ANY OTHER PERSON.—If under this section an interest would, in the absence of a disclaimer by any person other than the surviving spouse, be considered as passing from the decedent to such person, and if a disclaimer of such interest is made by such person and as a result of such disclaimer the surviving spouse is entitled to receive such interest, then—

(A) if the disclaimer of such interest is made by such person before the date prescribed for the filing of the estate tax return and if such person does

not accept such interest before making the disclaimer, such interest shall, for purposes of this section, be considered as passing from the decedent to the surviving spouse, and

   (B) if subparagraph (A) does not apply, such interest shall, for purposes of this section, be considered as passing, not to the surviving spouse, but to the person who made the disclaimer, in the same manner as if the disclaimer had not been made.

The petitioner first argued that Joan and Warren Caswell's deed of their interests in the Rockville Centre residence was a disclaimer. Relying on *Estate of John P. Hoelzel*, 28 T.C. 384 (1957), it contended that a disclaimer need not be in any particular form but can be implied from the facts and circumstances of each case, and therefore, since Joan and Warren Caswell, by the execution of the deed, relinquished their interest in the residence and never exercised any other control over it, the deed was an effective disclaimer. The petitioner's argument assumed that a disclaimer, qualifying under section 2056(d) (2), need not conform to the applicable State law procedures for renouncing interests in an intestate's estate. The respondent contested the petitioner's assumption and argued that, in fact, the deed did not qualify as a renunciation under New York law. Consequently, the preliminary question to be decided is whether "disclaimer," as used in section 2056(d) (2), refers to the State law procedure for renouncing interests in intestate estates.

The legislative history of section 2056(d) (2) indicates that a qualifying disclaimer must satisfy the conditions of applicable State law. The disclaimer "must be a valid refusal under State law." S. Rept. No. 1599, 89th Cong., 2d Sess., p. 5 (1966). In a footnote, the Senate report further explained its position by stating that it "is not material for this purpose whether a particular State law uses the term 'disclaimer' or uses another term describing the same legal effect." S. Rept. No. 1599, *supra* at p. 5 fn. 2. In addition, one reason for adopting the present provisions of section 2056(d) (2) was to correlate the Federal estate and gift tax consequences of refusals to accept shares of a decedent's estate. S. Rept. No. 1599, *supra* at p. 5. If such a refusal is valid under local law, and if certain other conditions are met, the refusal, and consequent transfer to another, does not result in a gift for gift tax purposes. Sec. 25.2511–1(c), Gift Tax Regs.; see *Kathryn S. Fuller*, 37 T.C. 147 (1961). As the Federal estate and gift taxes are intended to provide consistent tax treatment for disclaimers of inherited property, local law should have the same impact on both taxes. Furthermore, in the case of a surviving spouse who, for purposes of the marital deduction, attempted to shift interests in a decedent's estate, the attempt was not recognized for Federal estate tax purposes because it was not valid under State law. *Estate of William*

*John Ahlstrom*, 52 T.C. 220 (1969) ; S. Rept. No. 1013, 80th Cong., 2d Sess., Part 2, p. 5 (1948). Considering the legislative history of section 2056(d)(2), its correlation with the gift tax provisions, and the requirements imposed on a surviving spouse in a similar situation, it must be concluded that "disclaimer" means a refusal to accept inherited property which is effective under local law.

New York State has provided a statutory procedure for renouncing interests in intestate estates. N.Y. Est., Powers & Trusts Law sec. 4–1.3 (McKinney 1967). The statute imposes conditions which the deed failed to meet. A renunciation must be filed with the Surrogate's Court which has jurisdiction over the decedent's estate within 6 months after letters of administration have been issued, unless an extension is granted. Id. at sec. 4–1.3(a). The deed was not filed with the Surrogate's Court of Nassau County by the time of trial herein, and the court never granted an extension of time to file the deed. A renunciation "limited to specified items of the decedent's property is ineffective." Id. at sec. 4–1.3(d). The deed described and conveyed interests in a particular piece of property, which the children had inherited. In addition, the deed did not reflect the grantors' intent to renounce, which a renunciation is required to do. *In re Gerke's Estate*, 70 Misc. 2d 280, 332 N.Y.S. 2d 493 (Wayne County Surr. Ct. 1972). The deed was written in terms of conveying property ; it contained no indication that it was meant to be a refusal of inherited property. For these reasons, it is clear that the deed did not qualify as a renunciation under the applicable New York statutes.

Apparently, compliance with the provisions of the New York Est., Powers & Trusts sec. 4–1.3 (McKinney 1967) is the exclusive method by which a distributee can renounce an intestate share in New York. *In re Gerke's Estate, supra* at 332; see *In re Estate of Weinig*, 66 Misc. 2d 216, 320 N.Y.S. 2d 341 (Nassau County Surr. Ct. 1971). Under earlier New York law, an intestate successor could not renounce his distributive share. Practice Commentary, N.Y. Est., Powers & Trusts Law sec. 4–1.3 (McKinney 1967). Upon the intestate's death, the distributees were automatically vested with title to their respective shares of the intestate estate. *In re Ramsdill's Estate*, 190 N.Y. 492, 83 N.E. 584 (1908). Consequently, statutory authorization was required to permit intestate successors to renounce their distributive shares. Hence, since the deed did not comply with the renunciation procedures under the New York statutes, it was not an effective renunciation or disclaimer under New York law.

Moreover, the deed was not a disclaimer as that term is used in section 2056(d)(2). In the Senate Finance Committee Report (S. Rept. No. 1599, 89th Cong., 2d Sess., p. 5 fn. 2 (1966)), a disclaimer was defined as :

a refusal, made without consideration, which is valid under State law and by reason of which the interest "disclaimed" is received by the surviving spouse either by operation of law or other provision made by the decedent.

Under that definition, a disclaimer must meet several tests: it must constitute a valid refusal under State law to accept the interest; it must be made without consideration; it must also result in the surviving spouse acquiring the property of the decedent by operation of law or by other provision made by the decedent. Not only does the deed fail to qualify because it was not a valid refusal under State law to accept the interest, but it also fails because the deed did not result in Mrs. Caswell acquiring the interests of her children by operation of law or by provision made by the decedent. The interests she acquired by the deed were acquired directly from the children. Cf. *Isaac Harter, Jr.*, 39 T.C. 511 (1962); *Estate of Walter O. Critchfield*, 32 T.C. 844 (1959).

The petitioner argued that the deed's failure to comply with the New York statute is immaterial because the pertinent Federal estate tax regulations do not distinguish between disclaimers, and transfers, by persons other than surviving spouses. Sec. 20.2056(d)-1(b), Estate Tax Regs. However, the regulation to which the petitioner has referred is inapposite. The regulation was written pursuant to a prior version of section 2056(d)(2), which provided that a disclaimer by a person other than a surviving spouse would not affect the marital deduction. Sec. 2056(d)(2), as it existed prior to enactment of Pub. L. 89–621 (Oct. 4, 1966). Since such disclaimers had no impact on the marital deduction, there was no reason to accord different treatment to disclaimers, and transfers, by persons other than surviving spouses.

The petitioner also argued that the renunciations filed on August 8, 1968, qualify as disclaimers. The respondent challenges that argument on several grounds: The New York statute, in part, provides:

Such renunciation * * * shall be filed * * * within six months after letters of administration have been issued. * * * The time to file * * * a renunciation may be extended, in the discretion of the surrogate, on a petition showing reasonable cause * * * [N.Y. Est., Powers & Trusts Law sec. 4–1.3(a) (McKinney 1967).]

(e) A renunciation may not be made * * * after the renouncing person has accepted all or part of the property of the decedent to which he is entitled * * *. For the purposes of this paragraph, a person accepts a share of the decedent's property if he voluntarily transfers or encumbers, or contracts to transfer or encumber all or part of such share, or accepts delivery or payment of, or exercises control as beneficial owner over all or part thereof, or otherwise indicates acceptance of all or part of such share. [Id. at sec. 4–1.3(e).]

The respondent contended that any extension of the time within which to file a renunciation had to be granted within the initial 6-month period, and since the surrogate's order granting the extension was made long after that period, such order was invalid. In addition, the

respondent argued that there has been no showing of reasonable cause for an extension. He asserted that the information contained in the petitions filed in the Surrogate's Court has not been made a part of the record of this case, and therefore, there is no evidence before this Court on which it can judge whether there was reasonable cause. The respondent also argued that the renunciations were invalid because they were filed after the children had accepted their distributions from the estate. Finally, the respondent contended that the renunciations failed to qualify as disclaimers under section 2056(d)(2) because they were filed too late.

Under *Commissioner* v. *Estate of Bosch*, 387 U.S. 456 (1967), we are not bound by the conclusions reached by the surrogate as to whether he could extend the time for filing the renunciations, as to whether there was reasonable cause for extending the time, and as to whether the renunciations could be filed after the distributees had received their distributions from the estate. However, we need not inquire into the New York law on these matters and express our opinions on them, for it is clear that in any event, the renunciations were filed too late. Under section 2056(d)(2), a disclaimer must be made prior to the date the Federal estate tax return must be filed.[2] The renunciations were made and filed with the Surrogate's Court at least 6 months after the estate tax return was due on January 21, 1968. The petitioner contended that the disclaimers were not untimely, arguing that, since the renunciations were deemed filed on May 9, 1967, for State purposes, they should also be deemed to have been filed on that date for Federal estate tax purposes. The respondent's opposition to that argument is based on his contention that Federal law controls the availability of the marital deduction and that it should not depend on random manipulation of State law.

In enacting section 2056(d)(2), Congress established an outer limit on the time during which an effective disclaimer could be executed. Presumably, it believed that if the interests in an estate were to be shifted, the shifting should be completed by the time the estate tax return was to be filed and the tax computed.

The exertion of * * * [Congress'] power [to tax income] is not subject to state control. It is the will of Congress which controls, and the expression of its will in legislation, in the absence of language evidencing a different purpose, is to be interpreted so as to give a uniform application to a nationwide scheme of taxation. State law may control only when the federal taxing act, by express language or necessary implication, makes its own operation dependent upon state law. [Citations omitted; *Burnet* v. *Harmel*, 287 U.S. 103, 110 (1932).]

---

[2] The disclaimer must also be made before the disclaiming person accepts the property disclaimed. Sec. 2056(d)(2). Because of the decision reached in this case, we are not deciding whether any of the children's actions constituted acceptances.

There is no reason to believe that Congress contemplated that its restriction could be circumvented by a nunc pro tunc order of a State court made after the due date of the Federal estate tax return. If such a nunc pro tunc order were to be given effect, the Federal requirement could become meaningless. *Daine* v. *Commissioner*, 168 F. 2d 449 (C.A. 2, 1948), affirming 9 T.C. 47 (1947) ; *M. T. Straight Trust*, 24 T.C. 69 (1955), affd. 245 F. 2d 327 (C.A. 8, 1957) ; cf. *Samuel S. Davis*, 55 T.C. 416 (1970) ; see generally *Riley Co.* v. *Commissioner*, 311 U.S. 55 (1940) ; *Estate of Frederick L. Flinchbaugh*, 1 T.C. 653 (1943). Any time that a State court could be convinced to enter a nunc pro tunc order, a disclaimer could be made even though the time limit established by Congress had long since passed. For these reasons, it seems clear that the nunc pro tunc order of the Surrogate's Court should be disregarded in determining whether the disclaimer was executed within the time limit established by Congress, and since the renunciations were in fact filed more than 6 months after that time limit, they do not qualify under section 2056(d)(2).

*Decision will be entered for the respondent.*